## C. B. WRIGHT, JR., V. ALLAN MACDONNELL ET AL.
### No. 249.

1. **Fixtures—Landlord and Tenant.**

    The rules of law as to the rights of the landlord touching fixtures placed on leased premises by the tenant must yield to special provisions of the contract made by the parties. In the absence of a special stipulation to the contrary, fixtures placed upon the demised premises by the tenant are personal property, subject, however, to become parts of the realty if not removed by him during the time allowed him by law for their removal..... 146

2. **Same—Construction of Lease.**

    A lease contract provided: "This lease does not cover the use of the land for any but mining purposes, except the privilege is hereby extended the party of the second part (the lessee) to put up all necessary buildings or structures for conducting a mining business, and for the accommodation of persons and their families employed in or about the mines. And at the termination of this lease, the lessee shall have the right to remove all structures, buildings, engines, tools, machinery, cars, track, and other fixtures that do not now belong to the parties of the first part (the lessors). Provided, however, at the termination of this lease the lessors have the right to purchase any or all of the above named property at a fair valuation." Construing this contract, *Held:*

    1. It was the intention that the tenant should have the right to remove the structures erected by him during the term at any reasonable time after the lease had ended.

    2. The object is evident, to fix the rights in such structures by express agreement, and not to leave them to be determined by the law of fixtures.

    3. The structures became personal property of the tenant.

    4. That the structures were to remain the property of the tenant, not subject to forfeiture by failure to remove them at end of term............ 147

3. **Construction of Lease—Renewal.**

    See an instrument between same parties construed as intended as a mere extension of the former lease referred to therein, and that with respect to the ownership of the structures in controversy it was not the intention in any manner to change the rights of the parties as they existed under the former contract ....................................................................... 148

4. **Same—Estoppel.**

    The tenant under the lease erected improvements, with right to remove them. This right was not lost as against his lessors by the recovery of the leased premises at suit of a plaintiff with whom, subsequent to the eviction, the lessors compromised, so as to regain the land. The surrender to the lessors of the outstanding term restored the tenant's rights ....................... 149

5. **New Lease as Affecting Fixtures.**

    According to the weight of authority, when a new contract is entered into between the landlord and his tenant which neither merely renews nor extends the former lease, but which creates a new lease, and in which the right to the fixtures annexed is not reserved, the tenant loses his privilege of removal.. 150

6. **Same—Intention.**

    Whether it is the intention of the parties in any particular case to make fixtures erected by a tenant the property of the landlord upon the making of a new lease for the premises, is the very point to be determined in a contest over them between landlord and tenant. An intent to surrender a valuable right ought not to be lightly implied............................. 150

**7. Same—Same.**

Tenant had renewed his lease twice, reserving right to remove structures erected by him in coal mining. The possession was broken by a judgment recovering the land under an older lease. The lessors settling with the plaintiff recovered the land. Pending negotiations for a more protracted lease, the tenant re-entered for sixty days, which term was extended for another sixty days; rental as in the first lease contract; no mention made of fixtures. *Held,* that the tenant's right of removal was not lost, and that the doctrine that a tenant waives his right to fixtures by accepting a new lease does not apply to the facts of this case ........................... 151

**8. Conversion by Landlord of Fixtures Belonging to Tenant.**

A tenant having a right to remove structures erected by him when his term ended, was denied the right to remove them by the landlord. This operated as a conversion of the fixtures by the landlord, for which right of action arose. This right was not defeated by a subsequent lease, which did not determine anything as to the ownership of the fixtures .................. 152

**9. Value of Fixtures.**

The testimony showed that the fixtures considered as part of the realty were of value $5093, and their value if removed was $3189. The landlord is liable to the latter sum, with interest from date of their conversion ......... 152

ERROR to Court of Civil Appeals for Fourth District, in an appeal from Webb County.

The principal contention made in the petition for writ of error was against the decision of the Court of Civil Appeals in sustaining "the doctrine, that where a tenant under a lease reserving the right to remove his improvements, takes a new lease without such reservation, he thereby waives the right of removal."

The opinion gives a full statement.

*Dodd & Mullaly* and *J. O. Nicholson,* for plaintiff in error.—Where a lease of lands is made in renewal of a former lease, and contains a provision, that the terms and conditions of such former lease not inconsistent with the terms of such renewal shall be binding on the parties, and that such renewal is an extension of such former lease, all the terms and conditions of such former lease not so inconsistent must be considered as a part of such renewal, and should be given effect, and it is error to ignore any such term or condition. Bank v. Merrill Co. (Wis.), 34 N. W. Rep., 514; Kerr v. Kingsbury, 39 Mich., 150; Hill v. Still, 19 Texas, 84; Haldeman v. Chambers, 19 Texas, 1; Topliff v. Topliff, 122 U. S., 131; 1 Washb. Real Prop., 488–490, 526; Wall v. Hinds, 64 Am. Dec., 72, 73; Miller v. Plumb, 16 Am. Dec., 458; Taffee v. Warnick, 23 Am. Dec., 384, 385.

· *E. A. Atlee,* for defendants in error.—Referring to the opinion of the Court of Civil Appeals, on motion for rehearing, counsel would rsepectfully submit the following:

It appears therefrom that plaintiff in error was not evicted from the land by the judgment in favor of Hunt. The term of the lease of

February 20, 1890, was expressly limited by the contingency therein expressly contemplated by the parties. The evidence sustains this conclusion of the court. In this connection, defendants would suggest that their plea of the statute of limitations of two years is amply sustained, and the judgment of the trial court and of the Court of Civil Appeals may rest upon such plea. For this is an action to recover personal property or its value, the plaintiff alleging in the trial court, that defendants "have converted the same to their own use and benefit."

The action was not brought upon the breach of a covenant of warranty, either expressed or implied, but it was simply an action for conversion of personal property, the prayer being "for the value of said property, or restitution thereof."

The plaintiff in error, in his argument for the writ of error, sustains this proposition in the following language: "Now, as a judgment is an ouster (1 Washburn Real Property, 526), petitioner, in contemplation of law, was ousted of the possession of his improvements by the judgment of the District Court on January 20, 1890, and the conversion of his property by the defendant then took place." It is not a suit upon a written contract, but for a tort growing out of a contract. If there was a conversion of property, it occurred one month before the making of the lease of February, 1890; and if, as argued by plaintiff, the lease of that date "does not affect the rights and liabilities of either party in any way," then why does not the statute as pleaded bar plaintiff's action?. It is respectfully submitted, therefore, that this court, upon the case as made, may rest its decision upon such plea.

But the plaintiff in error contends, (1) that the agreement of June 13, 1892, can not be fairly regarded as a lease in the sense that it could involve a waiver of any rights then existing by virtue of a former occupancy under lease; and (2) that the right of removal did not exist in petitioner on June 13, 1892.

What is a lease? "A lease is in effect a conveyance or grant of the possession of property (generally, but not necessarily, land or buildings), to last during the life of a person, or for a term of years or other fixed period, or at will, and usually with a reservation of rent." 2 Rapalje & L. Law Dic.

The facts show that the lease was made. That it was temporary, and covered only a period of four months, does not diminish its force or character. The premises, prior to this temporary leasing, had passed into possession of defendants in error, and the lease, consummated on the 14th of June, 1892, by the acceptance of the proposition of plaintiff in error, was not a continuation or renewal of any former lease.

In the case of Bank v. Merrill Co. (Wisconsin), 34 Northwestern Reporter, 514, a new lease was taken—the lessee continuing in possession, and the evidence abundantly showing that the lessor at all times recognized the lessee's ownership of the fixtures. The case expressly recognizes the established rules, that "if a tenant, having placed erec-

tions or machinery upon the leased premises during his term, which would be deemed a part of the realty as between grantor and grantee, and at the end of his term surrenders the actual possession of the leased premises to his landlord without first removing such erections or machinery, and without obtaining the right to remove them from the landlord after the surrender, either by the terms of the lease or by the agreement with the landlord at the time of the surrender, he waives his right to so remove the same, and they become the property of the landlord."

The case cited is in harmony also with that of Josslyn v. McCabe (Wisconsin), 1 Northwestern Reporter, 174, in which it is held: "Where a lessee fails to remove fixtures during his term, he can not, after surrender, remove them, except by agreement with the lessor reserving such right."

The case of Kerr v. Kingsbury, 39 Michigan, cited by plaintiff in error, involved facts showing a renewal of lease, the tenant continuing in possession. There the court discussed the case of Merritt v. Judd, 14 California, 59, and other cases, besides that of Laughran v. Ross, 45 New York, 792. In referring to the reasoning that the acceptance of a new lease is equivalent to a surrender of the possession, the court says: "This is perfectly true if the second lease includes the buildings; but unless it does so in terms or by necessary implication, it is begging the whole question to assume that the lease included the buildings as a part of the realty. In our opinion, it ought not to be held to include them, unless from the lease itself an understanding to that effect is plainly inferable." This case, however, does seem to antagonize the better rule in Laughran v. Ross. See also Talbot v. Cruger, 30 N. Y., 1011; Sampson v. Cotton Mills, 64 Fed. Rep., 939. The intention of the parties controls; and where no mention is made of the privilege of removal of fixtures in a renewal of lease, and nothing is therein expressed from which the right of removal may be inferred, the supplying of such inference would be unwarranted. Such inference can not arise in the case at bar, because plaintiff urges in his second ground of error, that "the right of removal did not exist in petitioner on June 13, 1892." Defendants were then in possession of the property. Plaintiff was then proposing terms of a temporary lease. Such lease was consummated on June 14th, and plaintiff then, upon the terms agreed on, went into possession. If the right of removal did not exist on June 13th, by what act of the parties, after that time, was the right created? No improvements were made during the four months following, and in response to the demand for possession at the expiration of such period, plaintiff informed defendants that he would deliver on the day named, and on the day appointed he did deliver the property in question to the defendants.

In the light of all the authorities, then, as applied to this case, it is respectfully submitted, that the plaintiff did not have the right to remove any fixtures from the land.

It is not disputed, that at the time of making the temporary lease defendants were·in possession, for they received possession on the 12th day of June.   The lease to plaintiff was made two days thereafter, and possession was then delivered to plaintiff.   Nor is it disputed, that at the end of the lease, in October following, the plaintiff voluntarily delivered back the possession to defendants.

The writings in the case show that a lease was made.   The intention of the parties is clearly expressed.   The words sufficiently show that the one party divested himself of the possession, and that the other came into it for a determinate time.

GAINES, CHIEF JUSTICE.—This suit was brought by plaintiff in error against defendants in error, to recover damages for the conversion of certain structures, such as houses, railroad track, and coal chutes, built upon land which had been leased by the defendants to the plaintiff.

C. M. Macdonnell and Teresa P. de Benavides were owners of a tract of land known as the San Tomas tract, upon which there was a coal mine, and in 1881 leased the mine to one A. C. Hunt, for the term of fifty years.   The defendants succeeded to the title of the lessors in that lease.   Before this, however, the lessors dispossessed Hunt, and he brought a suit against them for the recovery of the demised premises.   This suit was not determined until the 30th day of January, 1891, when the Supreme Court affirmed a judgment of the trial court rendered in Hunt's favor.

On the 1st day of March, 1887, the defendants leased the mines to plaintiff for the term of one year.   This lease contained the following provision:

"This lease does not cover the use of the land for any but mining purposes, except the privilege is hereby extended to the parties of the second part (the lessee) to put up all necessary buildings or structures for the conducting of a mining business, and for the accommodation of persons and their families employed in or about the mines.   And at the termination of this lease the parties of the second part (the lessee) shall have the right to remove `all structures, buildings, engines, tools, machinery, cars, track, and other fixtures that do not now belong to the parties of the first part (the lessors).   Provided, however, at the termination of this lease the parties of the first part (the lessors) have the right to purchase any or all of the above named property at a fair valuation."

Upon the expiration of the term so created, the lease was expressly renewed for the term of two years, extending from March 1, 1888, to March 1, 1890; and it was expressly stipulated, that the new lease was subject to the same terms and conditions as those contained in the former, except that the royalty upon the coal taken out should be increased from 15 to 20 cents per ton.

On the 20th day of February, 1890, the plaintiff and defendants executed another contract of lease, of which the following is a copy:

"'This memorandum witnesseth: whereas the mining rights and privileges heretofore let and leased to C. B. Wright, Jr., by the owners of a tract of land known as the Santo Tomas tract, are in litigation between said owners and A. C. Hunt et al., in the District Court of Webb County, Texas, and the cause number 649, A. C. Hunt, Trustee, v. The Rio Grande & Eagle Pass Railway Company, is pending appeal in the Supreme Court of the State of Texas; and desiring to continue the operation of the mines on said tract of land, and to preserve the mining properties thereon pending said appeal, therefore it is hereby agreed: (1) The said owners, to wit, Allan Macdonnell, who represents and herein acts for the estate of C. M. Macdonnell, deceased, as administrator, Teresa P. de Benavides, Ester B. de Herrera and her husband, Natividad Herrera, Jose Benavides, Margarita B. Mowry and her husband, W. H. Mowry, and he for himself, and Zaragosa Benavides, hereby let and lease unto C. B. Wright, Jr., for the full time pending the said appeal in the Supreme Court of the State. In consideration whereof, the said lessee hereby undertakes and agrees that he will operate the said mines and preserve the mining properties on said tract of land for and during the full time pending said appeal, and for all coal mined shall pay the said lessors the sum of twenty (20) cents for each and every ton of 2000 pounds, and upon the determination of said appeal the said lessee shall deliver to the said lessors the mines and mining properties hereby conveyed, preserved in good condition, so that the mining operations may be continued by said lessors. This agreement is understood to be an extension of the lease heretofore made, to wit, on the 1st day of March, 1887, of record in the records of deeds of Webb County, in volume 15, on pages 404–8, which lease was heretofore extended by an instrument in writing, also of record in the records of deeds of Webb County, in volume 16, on pages 592–5, and reference thereto is hereby made; it being understood, that the terms and conditions therein not inconsistent with the provisions of this instrument, prescribing the manner of working the said mines and operating the said mining enterprise, shall be binding on the lessors and the lessee herein.''

The judgment in Hunt's favor having been affirmed in January, 1891, in March next thereafter the plaintiff was dispossessed by the sheriff, and Hunt was placed in possession of the property.

After the decision of Hunt's case in the Supreme Court, the plaintiff applied to Allen Macdonnell, one of defendants, and the agent of his codefendants, to know if he desired to purchase the structures in controversy, and was told that he did not desire to purchase, and that plaintiff might take them away. The plaintiff continued to work the mine until a day or two before he was dispossessed by Hunt; and subsequently paid Hunt for its use and occupation after the judgment was affirmed in this court.

In May, 1892, Hunt agreed upon a compromise with the defendants, and on the 12th of June thereafter surrendered to them his lease and the possession of the property. The next day after the surrender the defendants made a contract with the plaintiff, which gave him the privilege of working the mines for sixty days, which, before the end of that period, was renewed for the same terms. At the expiration of the second term of sixty days, defendants took possession, having previously refused to permit the plaintiff to remove the structures in controversy. They were placed upon the land during the leases of 1887 and 1888.

Whether certain articles under certain circumstances are fixtures or not, is a question which has given rise to much contrariety of legal opinion. There are some questions as to the law of fixtures, however, which seem fairly well settled. The tenant may remove his fixtures at any time during his term, and after the term, while in possession of the demised premises, under some license or agreement, which creates what has been called an excrescence upon the term. It is conceded also, that when the term depends upon some event uncertain as to the time of its happening, the tenant has a reasonable time after its determination to remove his fixtures. But in general, these rules of law must yield to the special provisions of the contract made by the parties. Ewell on Fixtures, 149. In the absence of a special stipulation to the contrary, fixtures placed upon the demised premises by the tenant are personal property, subject, however, to become parts of the realty, if not removed by him during the time allowed him by law for their removal. By agreement, they may become the property of the landlord, subject only to the lease; or they may be made personalty, and, as between the landlord and tenant, the absolute property of the latter. In case of a special agreement, the rights of the parties are to be determined by their intention as evidenced by the terms of the contract.

Applying these rules to the lease which was entered into between the plaintiff and the defendants on the 1st day of March, 1887, the question which presents itself is, what was the intention of the parties with reference to the structures which it was contemplated would be placed by the tenant upon the land? Was it intended merely to declare them fixtures, and leave them subject to the law of fixtures? If so, the provision was unnecessary, for the law would have implied that intention as fully as it could have been expressed. It is true, that it is not unusual for the parties to a contract, out of abundance of caution, to express that which the law would have implied; but before such a construction can be placed upon the language, we think that it should clearly appear that it means neither more nor less than the contract would have been construed to mean had the words been omitted. All words employed in a written instrument should, if practicable, be given effect. The presumption is, that they have been inserted for a · purpose; and that construction should be avoided which would render

them nugatory. The structures contemplated by the parties included houses, car tracks, and engines—property which was presumably necessary for the operation of the mines, and which could not well be removed on the very day of the termination of the lease. We think, that it was the intention that the defendant should have the right to remove them at any reasonable time after the lease had ended. In this respect, at least, it was evidently contemplated that the law of fixtures should not apply. But we think that the provision was intended for a still more important purpose. The object of the parties was not to leave their rights to be determined by the law of fixtures, but to fix them by express agreement. Property affixed to the land of another under a license from the owner is personal property (Railway v. Canton Co., 30 Maryland, 347); and it would seem that the party who so affixed it would have the right to remove it within a reasonable time after the expiration of the license, and probably within a reasonable time after he should receive notice of the owner of the soil to remove it. It is to be noted, that the contract in this case expressly confers upon the defendant the right to erect the structures; and we see no good reason for holding, that because he was made a tenant he was placed in a worse position than a mere licensee. If, as between the owner and a licensee, the structures would have been the personal property of the latter, and would not have become a part of the realty by a failure to remove them within a reasonable time, why should not the same rule apply as between the landlord and tenant, where the permission to make the structures is not a mere license, but is an express provision in an agreement supported by a consideration? Porter's appeal, 10 Pa. St., 254, and cases there cited.

How long the plaintiff could have left the property upon the land without forfeiting his right to remove it, we need not determine. After Hunt had agreed to surrender his lease, he applied to Macdonnell for the privilege of removing it, and was refused. This was as soon as the defendants had the power to permit him to take it away. Because the law regarded that which was annexed to the land as a part of the land, the right of the tenant to his fixtures, if not grudgingly and slowly conceded, has been carefully restricted. Only by statute in England has the law become applicable to agricultural tenants. Since the rights of the tenant, however, grow out of a contract the terms of which are not fully expressed, it is reasonable that they should be defined by fixed rules. Being originally a concession proceeding from the policy of the British Empire to foster trade, and applying only to trade fixtures, and being derogatory to the general right of the owner of the soil, it is not remarkable that the privilege of the tenant to treat his annexations as personal property, and to remove them as such, should be deemed conditional and limited to the continuance of his term. But since the lessor and lessee may, as we have seen, make a special agreement in reference to fixtures, by which the right of one may be restricted and the right of the other correspondingly enlarged, we see

no reason why, when such agreement is entered into, it should not receive such construction as seems best to comport with the intention of the parties, without reference to what the law would have implied had no such agreement been made.

If there had been no right of erecting and removing fixtures growing out of the mere relation of landlord and tenant, it would seem that an express agreement that the tenant should have the privilege of annexing certain structures to the freehold, and of removing them upon the expiration of the term, would indicate an intention not only that the structures should be personalty, but also that they should remain the absolute property of the owner. The further provision in the lease in question, that the landlord, upon termination of the lease, should have the privilege of buying the fixtures, tends to evince the same intention.

In a contract of this nature, the practical construction of the parties is a circumstance which is entitled to weight in determining their intention. After the third lease was terminated by the affirmance of the judgment in Hunt's favor for the land, the plaintiff applied to Macdonnell to know whether he desired to purchase the structures which he had placed upon it, and was informed that he did not desire to purchase them, and that he (the plaintiff) was at liberty to remove them. Our conclusion upon the original contract between the parties is, that it was their intention that the structures in question were to remain the property of the plaintiff, and that his title was not subject to forfeiture by his failure to remove them immediately upon a termination of that lease. The second lease, with some exceptions not affecting this question, was made subject to the same terms and conditions as the first; and the third was declared, in the body of the contract, to be an extension of the two former.

The last of the three, however, demands some further consideration. It is to be noted, that the instrument in the granting clause omits the description of the demised premises. This was doubtless a clerical mistake. We must look to other parts of the instrument in order to determine the property which was covered by the lease. It appears from the first contract, that at the time it was executed the land had fixtures upon it which belonged to the lessor, and which the lessee at the end of his term was to surrender with the land. The words in the preamble to the contract under consideration, "desiring to continue the operation of the mines upon said tract, and to preserve the mining properties thereon pending said appeal," if they refer alone to the lessors, are entirely consistent with the idea that they were desirous of preserving their own mining properties. They gave no countenance to the construction that it was a purpose of the contract to make structures, to which the lessee had an undoubted title, the property of the lessors. The same remark is applicable to the provision that the lessee agrees to "preserve the mining properties on said land for and during the full time pending said appeal." The only words indicative

of an intention that the lessee was to surrender his right to remove his property are found in the stipulation for the delivery of the demised premises at the end of the term; and to our minds they are significant of a contrary intention. The lessee binds himself, upon termination of the lease, to deliver "the mines and mining properties hereby conveyed;" and these words indicate that there were other mining properties upon the land, which were not conveyed, and which were not to be delivered. The structures in controversy had been erected at the time this contract was made, and they were found by the court to be of the value of $5093, considered as a part of the realty; and their value if removed, as shown by the evidence, was $3189. The lease was not likely to continue more than one year, and the royalty to be paid was the same as that under the then existing lease. It is unreasonable to presume that it was intended that the lessee should lose property of such value, in the absence of some circumstance tending to show a consideration for so important a concession. Besides, when the appeal was determined and the lease was at an end, Macdonnell, declining to purchase the structures, consented that the plaintiff might remove them. After Hunt had agreed to surrender his term, Macdonnell refused to permit the removal, but placed his refusal not upon the ground that the plaintiff had surrendered his right by the terms of the third lease, but upon the ground that defendants had acquired title through Hunt. In construing a contract of this character, the practical construction of the parties ought to have a controlling effect. Our conclusion upon the lease under consideration is, that it was intended as a mere extension of the former lease, and that, with respect to the property in controversy, it was not intended in any manner to change the rights of the parties as they existed under the former contract.

The fact that the third lease was made determinable by the ending of the suit between Hunt and the defendants, did not, in our opinion, in any manner affect the rights of the parties with respect to the property in question. It is true, that plaintiff must have contemplated that if the suit was terminated in Hunt's favor, he would lose the property. This was a contingency that might have occurred under either of the former leases. So he must have contemplated, that in case Hunt prevailed in his suit he could be held liable by Hunt for the mesne profits of the demised premises during the time of his occupancy. His protection against both contingencies was the implied covenants in his lease. We conclude, that upon the termination of the third lease, as between the defendants and the plaintiffs, the structures in controversy remained the property of the latter.

Having been erected, however, without Hunt's consent, the property became a part of the realty as to him, and subject to his lease during its unexpired term. Hunt's lease having been surrendered, though for a valuable consideration paid by the defendants, the property immediately reverted to the plaintiff. The effect of the surrender

was merely to terminate Hunt's right, and it left the title to the property the same as it would have been had Hunt been cast in the suit. If, however, upon the surrender, Hunt had undertaken to convey to defendants the property in controversy, the result in our opinion would have been the same. In leasing the land to the plaintiff, they had held themselves out as the owners of the demised premises. The land had been recovered of them by suit, and the plaintiff had thereby lost the right to recover his property. Having contracted that plaintiff should have that right, it would not lie in the mouths of the defendants, after acquiring Hunt's title, to say, that because of a defect in their own title he had lost his right of removal, or that they had acquired a right superior to his.

The effect of the new contract made between the plaintiff and the defendants after the surrender of the Hunt lease remains to be considered. According to the weight of authority, when a new contract is entered into between the landlord and his tenant, which neither merely renews nor extends the former lease, but which creates a new lease, and in which the right to the fixtures annexed during the first lease is not reserved, the tenant loses his privilege of removal. Loughran v. Ross, 45 N. Y., 792; 6 Am. Rep., 173; Carlin v. Ritter, 68 Md., 478; 6 Am. St. Rep., 467, and authorities there cited. The ruling proceeds upon the theory that the tenant, by leasing of the landlord the demised premises, without excepting the fixtures, leases the fixtures, and thereby acknowledges the title of the landlord, and is estopped to deny it. A tenant making a new lease in lieu of a former one, may, as a part of the consideration proceeding from him, expressly or impliedly stipulate that fixtures theretofore or thereinafter placed by him upon the land, shall, at the end of the term, become the property of the landlord. Where such is the proper construction of the contract, it is proper to hold that the tenant has surrendered his right to remove. But whether it ought, as an original proposition, to have been held, that the mere taking of a new lease without mention of the fixtures has such an effect, may be gravely doubted. There seems to be a vice in the argument, for the reason that it assumes that the tenant, in leasing the land, thereby also leases the fixtures. So long as the tenant has the right of removal the fixtures are his, and to assume that by leasing the land upon which they are placed, he leases them of his landlord, is to assume that he intends to lease his own property. Whether it is or is not the intention of the parties in any particular case to make them the property of the landlord, is the very point to be determined. An intention on part of the tenant to surrender a valuable right ought not to be lightly implied, though such intention might be made manifest by the circumstances of the particular case. Contrary to the weight of authority, it is held in Kerr v. Kingsbury, 39 Michigan, 150 (33 American Reporter, 362), and in National Bank v. Merrell Co. (Wis.), 34 Northwestern Reporter, 514, that the tenant does not waive his right to his fixtures by accepting a new lease. The

opinion of Judge Cooley in the former case is an able presentation of that side of the controversy, and is very difficult to answer. It is substantially followed in the Wisconsin case.

But as we view the case before us, it is not necessary for us to determine the naked question. The rule recognized by the majority of the courts is neither inflexible nor arbitrary. It must yield to the intention of the parties to the lease, as deduced from the language employed, when viewed in the light of the circumstances attending the transaction. The agreement for the sixty days' lease, if such it can be called, is contained in two letters, one by the plaintiff's agent (using the name of the Laredo Coal Company), submitting a proposition for working the mine, and the other by Allen Macdonnell, in behalf of defendants, accepting the terms proposed. The first letter was written immediately after Hunt's surrender of his lease was finally consummated by surrender of possession, and, in so far as it bears upon the question under consideration, reads as follows: "In compliance with your request this a. m., I submit the following propositions: The Laredo Coal Company to work the mines for sixty days from and after to-day, so as to give sufficient time for a lease to be drawn up for a longer period, said company to leave said mine in as good condition as it can possibly be placed in said period. * * * In the event a lease has not been made or consummated in said period, a further time, to be agreed upon by the owners of said mines, shall be given to the Laredo Coal Company."

The reply accepted the terms proposed, without modification. Before the sixty days had expired the contract was extended for an additional sixty days, upon precisely the same terms. Now, if we are correct in our former conclusions, that upon the expiration of the third lease the structures in controversy remained the property of the plaintiff, subject only to Hunt's lease, and that upon the surrender of that lease his right to remove them, at least within a reasonable time, became absolute, it follows, that on the day the plaintiff's proposition was made the structures were his; and we see nothing in that proposition that evidences an intention that, at the expiration of the sixty days, they should become the property of the defendants. The concession, which was asked for and which was granted, was the privilege of working the mine for the period designated. It is clear, that this was not inconsistent with the intention that the fixtures which had been erected by the plaintiff should remain his own. In other words, it is evident that the plaintiff did not by this contract, either expressly or impliedly, lease from the defendants his own fixtures; and it follows, as we think, that the doctrine, that by taking a new lease without removing his fixtures, the tenant loses the right to remove them, is not applicable to the case. Besides, the circumstances strongly repel the presumption that any such result was contemplated by the parties. The transaction was temporary, and merely intended to cover the time during negotiations for a more protracted lease.

The term was short, and the plaintiff stipulated to pay the same royalty which was paid under the first lease. It is unreasonable to conclude, that it was intended by the parties that the plaintiff should surrender property, which the court found to be of the value of $5093, in consideration of a demise for only 60 days.

But for still another reason, we think that the temporary contract made in June, 1892, and the subsequent extension of that contract, do not stand in the way of the plaintiff's recovery in this action. Before that contract was entered into, the defendants had refused to permit the structures to be removed. This was a conversion, and the plaintiff's right of action then accrued. He would not have lost his right to recover damages by treating the structures in a subsequent transaction as the property of defendants.

The action was brought in less than one year from the time of the conversion, and therefore it was not barred by limitation.

The value of the property as detailed was shown by the evidence to be $3189, at the time of the conversion. This sum, with the interest thereon, is the measure of the plaintiff's damages.

The judgments of the Court of Civil Appeals and of the District Court are accordingly reversed, and judgment here rendered for plaintiff for the sum above named, together with interest thereon at 6 per cent per annum from June 12, 1892.

*Reversed and rendered.*

Delivered April 8, 1895.