## MEERS et ux. v. FRICK–REID SUPPLY CORPORATION et al.

### No. 4997.

Court of Civil Appeals of Texas. Amarillo.

March 6, 1939.

Rehearing Denied May 1, 1939.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellants.

Fischer & Fischer, of Amarillo, for appellees.

STOKES, Justice.

On the 3rd day of April, 1929 appellants, J. F. Meers and wife, executed and delivered to Albert McCollum an oil and gas lease on 80 acres of land owned by them in Gray County. The lease provided that it should remain in force and effect for a primary term of five years and as long thereafter as either oil or gas should be produced from the land. It contained royalty provisions of two-eighths of any oil or gas that may be produced and saved from any well or wells that may be drilled thereon and provided that drilling operations should commence within ninety days from the date of the lease.

About the middle of July, 1929, McCollum began the drilling of a well on the land and completed the same to a depth of 3,000 feet or more about January 1, 1930. Gas in considerable quantities was discovered before the well was completed but, in an effort to discover and produce oil, McCollum cased off the gas and drilled some distance below the gas horizon.

About July 15, 1929, McCollum purchased from appellee, the Frick-Reid Supply Corporation, certain oil well machinery, casing, tools and supplies to be used by him from time to time in the drilling of the well, agreeing to pay therefor within sixty days. Within the time provided by law the Frick-Reid Supply Corporation filed in the office of the County Clerk of Gray County an affidavit and verified claim in which it fixed, secured and claimed a material-man's lien upon the leasehold estate and the material furnished by it, under article 5473, Revised Civil Statutes 1925, as amended in 1929 Acts Forty-first Legislature, Chapter 223, Vernon's Ann. Civ.St. art. 5473, to secure its account amounting to $7,107.67.

On or about August 1, 1929 the lessee, McCollum, purchased from the other appellees, Atlas Supply Company and Hinderliter Tool Company, certain material and supplies which he used in the drilling of the well and to secure the payment of which the Hinderliter Tool Company filed its mechanic's lien claiming an indebtedness of $3,082.12 and Atlas Supply Company filed a similar lien claiming an indebtedness of $2,660.13.

On July 9, 1930, appellee, the Frick-Reid Supply Corporation, filed this suit against Albert McCollum and a large number of other parties to whom McCollum had assigned certain portions of the leasehold estate in which it sought judgment for its debt and foreclosure of its material-man's lien on the leasehold estate and material and supplies furnished by it. Appellants, Meers and wife, were not made parties to the suit at that time.

At some time after the completion of the well on or about January 1, 1930, and before the suit was filed July 9, 1930, McCollum abandoned the well and leasehold estate and appellants, Meers and wife, on October 27, 1930, filed another suit, No. 2620, against McCollum and others, including the appellees, Frick-Reid Supply Corporation and all other parties to this suit, in which they sought to recover the leasehold estate by virtue of their allegations that the same had been abandoned and forfeited. During the trial of Cause No. 2620 appellants, who were plaintiffs therein, and appellees, who were defendants therein, entered into a written stipulation to the effect that in the event appellants, Meers and wife, prevailed in that suit, the decree of the court would be res adjudicata as against appellees herein in so far as they claimed a lien against the oil and gas leasehold estate but that such judgment should not be res adjudicata on the question of whether, with the lease terminated, appellees still had and could claim and foreclose their liens against the casing in the well. The stipulation further provided that appellees would not, in that suit, seek to recover judgment for, nor to foreclose their alleged liens upon, the oil and gas leasehold estate.

Cause No. 2620 was tried in the district court before a jury and on the 31st day of August, 1931, upon a verdict favorable to appellants, Meers and wife, the court rendered judgment in their favor against all the defendants, including the appellees here, to the effect that, prior to August 11, 1930, the oil and gas lease had been abandoned by McCollum and the other defendants interested with him and that the lease had expired and terminated and that it was null and void. The title to the leasehold estate was divested out of McCollum and his associates and vested in appellants. Appellees appealed from the judgment so entered and on the 29th of June, 1932, it was affirmed by this court. 52 S.W.2d 115, 119.

On August 11, 1930, before the filing of Cause No. 2620, upon application of Frick-Reid Supply Corporation, J. R. Phillips was appointed in the instant case as receiver of the oil and gas leasehold estate and all property and equipment thereon situated, including the oil well that had been drilled thereon by McCollum. Phillips duly qualified and took possession of the property and premises and filed an inventory thereof.

It seems that during the process of drilling the well and after the gas had been encountered and cased off, McCollum "shot" the well in an effort to accelerate to paying quantities the small amount of oil that had been discovered and in doing so he damaged the casing, after which the abandonment took place. When the receiver took charge of the property, therefore, the well was in bad condition and was not producing any oil or gas. Instead of drawing the casing from the well and disposing of the material and supplies that remained on the premises, the receiver made application and obtained an order from the court authorizing him to recondition the well in an effort to bring it in as a producer of gas. In doing this the receiver drew out the inner casing that had been inserted to shut off the gas and explore for oil at a greater depth, plugged the well back to the gas horizon and developed gas production of more than five million cubic feet per day. There being no available market, however, the well was capped and all of the material and supplies located at the well, except the casing in the well, was sold by the receiver and the proceeds, amounting to $1,139.10, deposited in the bank.

Appellees, Hinderliter Tool Company, Atlas Supply Company, and Parkerburg Rig and Reel Company, were permitted to intervene and filed interventions in this case on the 10th of August, 1930, but appellants, Meers and wife, were not parties to this suit until they were made so by an amended petition filed by appellee, Frick-Reid Supply Corporation, on May 17, 1934. The case was tried upon the second amended original petition of Frick-Reid Supply Corporation, filed on the 10th of June, 1937, in which it seeks judgment for its debt and foreclosure of its material-man's lien upon the casing in the well, consisting of 2,799 feet, which was a portion of the material sold to the lessee and used by him in drilling the well.

Appellants answered by general demurrer, general denial, pleas setting up the two and four years' statutes of limitation and a special plea to the effect that by reason of the abandonment of the leasehold estate and adjudication of such abandonment in the prior suit No. 2620, and by reason of the fact that the casing is located in the

well on their premises and it being firmly attached to the soil by cement, the ownership of the casing is vested in them free and clear of the alleged liens of the appellees.

The case was submitted to the court without the intervention of a jury upon an agreed statement of facts supplemented by a small amount of documentary evidence and oral testimony, and judgment was rendered in favor of the appellees foreclosing their liens as of equal dignity upon the casing remaining in the well and the funds in the hands of the receiver, decreeing, however, that the court costs should first be paid out of the latter.

Appellants duly excepted to the judgment, gave notice of appeal and have perfected their appeal to this court presenting the case here upon a number of assignments of error in which they attack the judgment upon the contentions; first, that upon the termination of the lease by abandonment, the casing in the well and affixed to the soil reverted with the lease and became their property; second, that in all events, conceding the right of the original lessee and appellees to remove the casing after the lease was abandoned, they had only a reasonable time in which to do so and, not having removed it within a reasonable time, it reverted to them and became their property; third, the claims of appellees are barred by the two and four years statutes of limitation.

■ The first contention made by appellants cannot be sustained. In the first place the lease contract provides that the lessors, in consideration of the sum of $10 and of the royalties provided and the agreements of the lessee therein contained, grant, lease and let the leasehold estate to the lessee for the purpose of prospecting and drilling for, and producing oil and gas. This is unquestionably a license to the lessee to place upon the lease such structures, and to place in the well such equipment as may be necessary to prosecute the work of prospecting or drilling for oil or gas. It has long been the law in Texas that property affixed to the land of another under a license from the owner is personal property. The party who annexes the same has the right to remove it within a reasonable time after the expiration of the license and it does not become a part of the soil. Moore v. Carey Bros. Oil Co., Tex.Com.App., 269 S.W. 75, 39 A.L.R.

1247; Wright v. Macdonell, 88 Tex. 140, 30 S.W. 907.

■ In the second place, as suggested by the Supreme Court in its opinion in the case last cited, the object of the parties, however, evidently was not to leave their rights to be determined by the law of fixtures but to fix them by express agreement in the lease contract. In order to make certain the rights of the parties in this respect they inserted in the lease the following provision: "Lessees shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by the lessee on said land, including the right to draw and remove all casing."

It is not an open question in this State as to the rights of the lessee under the quoted clause of the lease. Where a well is drilled under a lease containing such a provision and it fails to produce oil, gas or other minerals but results in what is commonly termed a "dry hole", the lessee unquestionably has the right, within a reasonable time after the lease has expired or terminated, to remove the casing and the fact that the lease has terminated by virtue of being abandoned by the lessee does not change the rule. In the case of Armstrong v. Federal Supply Co., Tex.Civ.App., 17 S.W.2d 170, in discussing a similar contention, the court held that the casing in the well was, under the authorities, during the term of the lease a trade fixture and subject to removal at any time under the express terms of the lease. Supported by a large number of authorities cited in the opinion, the court concluded that such provision has uniformly been held to authorize the removal of the casing within a reasonable time after the expiration of the lease. There is nothing inherent in such a provision as would warrant its condemnation and we think the law is well established that, in the absence of fraud, such a provision is valid and binding upon the parties even though the lease terminates by the act of the lessee in abandoning it. Wright v. Macdonell, 88 Tex. 140, 30 S.W. 907; Orfic Gasoline Production Co. v. Herring, Tex.Civ.App., 273 S.W. 944; Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W. 2d 1052.

■ The next contention made by appellants is, substantially, that if the casing did not revert to them with the leasehold estate immediately upon the abandonment

of the lease by the lessee, then a reasonable time having elapsed after the termination of the lease by abandonment in which the lessee would be permitted to return and remove the casing from the well, the casing became their property and neither the lessee nor appellees thereafter had the right to remove it from the well and repossess it. In order to avail themselves of this contention, it was necessary for appellants to allege and prove what would be a reasonable time under the circumstances of the case. That which constitutes a reasonable time is a question of fact or, at least, a mixed question of law and fact and depends upon the circumstances surrounding the case to which the principle is sought to be applied. What would be a reasonable time in one case might be wholly inadequate to shut off the rights of parties in a different case or under different circumstances. Armstrong v. Federal Supply Co., supra; Houston & T. C. R. Co. et al. v. Roberts, 101 Tex. 418, 108 S.W. 808.

Appellants made no issue upon this question either in their pleading or proof. They made no contention in the trial court that appellees or the lessee, McCollum, had failed to exercise their right to draw and remove the casing within a reasonable time. No witness testified as to any dilatory tactics nor as to any acts or conduct on their part from which the conclusion could be drawn that they had, by permitting a reasonable time to elapse, forfeited such right. Not having made such an issue in the trial court, nor shown by the testimony any facts under which that court could have concluded that a reasonable time had expired before any effort was made to remove the casing, appellants cannot be heard to raise the issue in this court. Waiving the point for the purpose of this discussion, however, the trial court found against appellants on the case as presented in that court and we are not authorized to disturb the finding if the facts and circumstances revealed by the testimony were such as to support it. This suit was filed on July 9, 1930. On August 11, 1930, a little more than a month after it was filed, J. R. Phillips was appointed receiver of the properties involved, including the leasehold estate, the well and the material and equipment that had been assembled by the lessee. It was shown that in drilling the well the original lessee had encountered some gas, the extent and quantity of which probably was not ascertained at that time. The receiver testified that there was "no oil to amount to anything" in the well and that the only thing to do was to pull the inside string of casing and "plug between the oil and gas, so the oil couldn't come up." From this, we assume that a small amount of oil was discovered but apparently it was not of sufficient quantity to warrant its production. Thus, it will be seen that both oil and gas were encountered in the well. On account of the damage done to the casing and the well by the original lessee in "shooting" it, it was not producing either oil or gas in any quantity when the receiver took charge. Shortly after his appointment, the receiver made application to the court and obtained from the court an order authorizing him to recondition the well and attempt to develop it as a gas well. The evidence shows that in doing this he drew out the inner casing that had been inserted to shut off the gas and drill the well to the oil horizon, plugged the well back from the bottom to the gas producing stratum and developed a gas well that was capable of producing and did produce more than five million cubic feet of gas per day. The gas was not placed upon the market because it seems there was no outlet or market for it at that time. There is nothing in the record which shows the length of time occupied by the receiver in all this process of reconditioning the well nor the time occupied in drawing the inner casing.

The agreed statement of facts shows, however, that the well had recently been cleaned out, shot and acidized. It is shown, furthermore, after all these efforts, the production of gas decreased to a point below paying quantities, and that, after it was finally determined the well could not be developed into a paying enterprize, the receiver sold and disposed of the machinery, boiler and all of the equipment located at the well except the casing which still remained therein. There is nothing in the testimony to show how much time was consumed by the receiver in disposing of the machinery nor is there any allegation or proof of any kind which shows or suggests any dilatory tactics or neglect on the part of either appellees or the receiver. The case was pending before the judge who appointed the receiver and gave to him such orders and authority as were necessary for the administration of the receivership and he had judicial knowledge of the orders issued by him as well as

such reports as may have been made by the receiver, together with the authorized acts and conduct of the receiver in his administration of the duties incumbent upon him as an officer of the court. Just what the full extent of these was, is not shown by the record. Appellants were made parties defendant to the suit on May 17, 1934, and, although it was not tried until January 7, 1938, almost four years thereafter, the record does not show they made any complaint of the acts and conduct of the receiver nor of appellees in connection with the administration of the receivership, nor of the failure to draw the casing and subject it to the payment of their liens. Obviously, if the efforts to restore the well and make of it a producer of gas in paying quantities had been successful, they would have inured to the benefit of appellants. Evidently such efforts had not ceased nor been delayed for any great length of time, because, as stated above, it was shown that the well was cleaned out, "shot and acidized" only a short time before the trial.

The general conception of that which constitutes a reasonable time under the law is such length of time as may fairly be necessary, considering the nature of the duty to be performed and the circumstances surrounding the matter in hand. It is that time which upholds and saves to each of the interested parties the rights to which they are entitled and protects them from injury or loss. Armstrong v. Federal Supply Co., supra. Moreover, it cannot be successfully maintained that appellants nor the court through the receivership were not warranted in making the efforts that were made by the receiver to recondition the well and develop gas in paying quantities. It is held that, when a well that is drilled in exploration for oil or gas is developed as a producing well and the conditions justify the conclusion that the enterprize is a successful one and that oil or gas may be produced in paying quantities, the right to draw the casing and destroy the well does not exist. Orfic Gasoline Production Co. v. Herring, supra. As we have stated, both oil and gas were encountered by McCollum, the original lessee, in drilling the well. Appellees' rights accrued when McCollum abandoned the leased premises. At that time it was not known whether or not oil or gas could be produced from the well in paying quantities. Under the royalty provision of the lease appellants' interest in any oil or gas of which the well was capable of producing may well have been considered by the court, the receiver and appellees as being of such magnitude and importance as not only to justify but to demand of them reasonable efforts to develop oil or gas in paying quantities; a right of appellants the violation of which might be attended by serious consequences.

Passing by the failure of appellants to present any pleading or proof concerning the manner in which the receivership was administered or any dereliction of duty or procrastination or unnecessary omission or delay of either the receiver or appellees, we think the record amply justified the trial court in concluding that a reasonable time had not elapsed in which appellees could assert their rights, as must have been in the mind of the court when he rendered the judgment foreclosing appellees' liens. Southwestern Oil & Gas Co. v. Kimball O. & D. Co., Tex.Civ.App., 224 S.W. 1111; Orfic Gasoline Production Co. v. Herring, Tex.Civ.App., 273 S.W. 944.

Appellees having furnished to the lessee McCollum the material used by him in drilling the well and their liens having been duly and legally established under the provisions of, and within the time provided by, the statute, they unquestionably had the right to subject to foreclosure proceedings the property covered by the liens, and that they had a reasonable time after the lessee abandoned the lease in which to do this cannot be questioned. For the reasons discussed, appellants' assignments raising this question must be overruled.

The next contention made by appellants is that the claims of appellees are barred by the two and four years' statutes of limitation. In our opinion, there is no merit in this contention. Appellants had no interest in the casing which constitutes the subject matter of the controversy unless the right of the original lessee and of appellees as successors to that right under their liens had been eliminated either by the abandonment of the lease or by the lapse of a reasonable time in which such right may be exercised. We have held that the right to draw and remove the casing had not been lost through either of these contingencies. Appellants, therefore, never acquired any right, title or interest in the casing and, until they acquired a right of some kind, they were not in a

position to plead the statutes of limitation. Columbia, etc., Trust Co. v. Strawn, 93 Tex. 48, 53 S.W. 342; Kiel v. Staber, Tex. Civ.App., 116 S.W.2d 809. Furthermore, the court could not have entered a judgment in their favor upon their assertion of limitation for the reason that they did not plead or prove any facts by which any period of limitation had its inception. We have held that no right accrued to them immediately upon the abandonment of the lease and that the record does not justify a holding that a reasonable time had elapsed for appellees to exercise their rights under their claims and liens against the original lessee. Unless these rights had been eliminated, or lost, appellants had no interest in the subject matter, and, no other grounds that would support a plea of limitation having been shown, they were not in a position to plead limitation against appellees. The assignments raising these questions are, therefore, overruled.

There are other assignments and propositions presented by the brief of appellants, but in the view we have taken of those discussed and the disposition we have felt impelled to make of the case as revealed by what we have said, it is believed the other assignments become immaterial. We have considered all of the assignments and propositions, however, and, believing that no reversible error is shown, the judgment of the court below will be affirmed.