Shirley McCORMICK et al., Appellants,

v.

Wesley E. KRUEGER et al., Appellees.

No. 17484.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Oct. 18, 1979.

Rehearing Denied Nov. 15, 1979.

Pannill & Hooper, William Pannill, F. H. Pannill, Sr., Houston, for appellants.

Sewell, Junell & Riggs, John Palmer Hutcheson, Houston, for appellees.

Before COLEMAN, C. J., and EVANS and DOYLE, JJ.

EVANS, Justice.

The plaintiffs appeal from a take nothing summary judgment entered in favor of the defendants.

The plaintiffs contend that their overriding royalty interest, reserved under a farmout of a 1969 oil and gas lease, was "washed out" when the owners of the working interest allowed the lease to expire, and that defendant Krueger, who in 1975 bought the leasehold equipment from the working interest owners and then acquired a new lease from the landowner, became bound under the terms of the lease and farmout agreement to honor the plaintiffs' overriding royalty interest.

The essential facts are not in dispute. The landowner, Findley H. Burns and wife, as lessors, executed an oil and gas lease dated May 2, 1969 in favor of Roy Johnston, as lessee, covering a 19.7 acre tract in Victoria County, Texas. That lease had a three year primary term and provided for a one-eighth royalty interest. The lease also contained a provision to the effect that the lessee had the right, during the term of the lease or within six months thereafter, to remove all property and fixtures, including well casing, placed on the land.

On October 14, 1970, the lease was assigned to the plaintiff, Sanford E. McCormick, and about a year later, McCormick farmed out the lease to W. Paul Nelson. In the farmout agreement, McCormick reserved an overriding royalty interest "un-

der and by virtue of the assigned leases or any extension thereof" and stipulated that the overriding royalty interest would extend to "all renewals and extensions of said leases or to any new lease taken on any of the lands covered by said leases within one (1) year of the expiration or termination of the applicable lease." Nelson drilled and completed the Findley H. Burns No. 1 Well, and McCormick then assigned the farmed out leases to Nelson, reserving the overriding royalty interest in accordance with the farmout letter.

In 1974 the well began to "water-out", and after fruitless efforts to restore production and to recomplete the well in an alternative producing sand, the contract operator, Paul Cameron, decided to plug and abandon the well. Pursuant to this decision, a letter was sent to the working interest owners, recommending that the well be plugged and abandoned.

During the last week of December 1974, the defendant Krueger looked at the well and offered Cameron $12,500.00 for the casing and equipment. On January 7, 1975, Cameron, after polling his principals, verbally accepted this offer, conditioned upon Krueger's agreement to plug the well. Krueger then went to Cameron's office, picked up the well logs and other papers to review for plugging, and upon examining the well logs, decided that "some oil may have been overlooked." Krueger, deciding to attempt his own recompletion, then contacted the landowner, Findley H. Burns, and obtained a new lease from Burns dated January 8, 1975, which provided for a 30 day primary term ¼ royalty interest.

On January 17, 1975, Krueger and Cameron executed a letter agreement which reflected the sale to Krueger of "the equipment and material, in, on, or used in connection with the Findley H. Burns Well No. 1 drilled under the terms of that certain oil, and gas and mineral lease dated May 2, 1969." On January 19 or 20, 1975, Krueger moved a workover rig onto the location and began recompletion operations which ultimately proved successful.

It is conceded that no production was obtained from the well after November 1, 1974, and that the lease expired on or before January 2, 1975, under its own terms, due to cessation of production.

The plaintiffs originally brought this action against the landowner, Findley H. Burns, the owners in the working interest in the 1969 leasehold, and against Krueger, his M & W Producing Company, and the assignee of his working interest in the 1975 leasehold, Virgil Mott. However, prior to the entry of the summary judgment, the plaintiffs took a non-suit against all defendants other than Krueger, M & W Producing Company and Virgil Mott. Motions for summary judgment were filed on behalf of both sides, and the trial court denied the motion of the plaintiffs and granted that of the defendant.

It is the plaintiffs' position that when Krueger purchased from Nelson's contract operator the right to salvage and remove the leasehold equipment from the land he, in effect, stepped into Nelson's shoes with respect to the farmout agreement and became legally bound to honor all of Nelson's covenants and agreements thereunder, including his stipulation that the reserved overriding royalty interest would extend to all renewals and extensions of the 1969 lease and to any new lease taken within one year of the date of expiration or termination. The plaintiffs argue that the 1975 lease must be considered as either an extension or a renewal of the 1969 lease or as a new lease taken within one year of the expiration of the earlier lease and that Krueger, having acquired the lessee's rights and benefits with respect to the salvage and removal of the leasehold equipment, assumed his assignor's contractual obligations to the owners of the overriding royalty interest. In support of their position the plaintiffs rely upon the rationale of such cases as *Greene v. White*, 137 Tex. 361, 153 S.W.2d 575 (1941).

The authorities referred to by the plaintiffs are distinguishable from the circumstances of the case at bar. It is generally true, as plaintiffs contend, that

grantees and assignees become bound by the contractual obligations of their predecessors in title. *Greene v. White, supra.* However, Krueger did not purchase from Nelson (or from his contract operator, Cameron), any interest in the mineral estate, and his contractual duties pertained solely to salvage and removal of the leasehold equipment and the plugging of the abandoned well.

In Texas, leasehold equipment is considered personalty, and an oil and gas lessee has the implied right to remove such equipment within a reasonable time of the expiration of the lease, even in the absence of a specific provision authorizing such removal. *Meers v. Frick-Reid Supply Corp.,* 127 S.W.2d 493 (Tex.Civ.App.-Amarillo 1939, no writ). Thus, upon expiration of the 1969 lease, the working interest owners were free to contract with any third party for the sale and removal of the leasehold equipment which they had placed on the land, and Krueger's agreement to purchase such equipment and to plug the well imposed no additional burdens upon him.

It is undisputed that the 1969 lease had expired at the time Krueger acquired the 1975 lease, and the plaintiffs' overriding royalty interest likewise was extinguished at that time unless, under the terms of the farmout agreement, the overriding royalty interest was extended to the working interest in the 1975 lease. *Sunac Petroleum Company v. Parkes,* 416 S.W.2d 798, 804 (Tex.1967). Since Krueger's purchase of the leasehold equipment imposed no contractual obligation upon him with respect to the mineral estate, he was not obliged, as lessee under the 1975 lease, to honor the plaintiffs' overriding royalty. *Sunac Petroleum Company v. Parkes, supra.*

The trial court's summary judgment is affirmed.