Sullivan,
March 5, 1907.

## GLIDDEN *v.* NEWPORT.

Where one loans money at interest and takes as security for the loan an absolute deed of real estate, giving a bond to the borrower to convey the realty to him upon payment of the loan, the lender is taxable for the money loaned, under clause 5, section 7, chapter 55, of the Public Statutes.

In such case the money loaned is not merged in the real estate, so that the taxation of the real estate to the lender is the taxation of the money.

PETITION, for abatement of taxes. Trial before *Wallace*, C. J., at the May term, 1906, of the superior court. Upon a consideration of the facts hereinafter set forth, the court dismissed the petition, subject to the plaintiff's exception.

In November, 1903, Edson W. and Julius E. Harvey were in possession of a farm in Newport under a bond for a deed from one Fletcher. Fletcher was pressing them for the payment of $1,350 due upon the bond, and they applied to the plaintiff for a loan of the money. The plaintiff agreed to loan them the money, he to have a deed of the farm and to give them a bond conditioned that he would convey the farm to them upon the payment of the $1,350 and interest. November 25, 1903, the plaintiff took a deed of the farm from Fletcher, paid him $1,350, and gave a bond to the Harveys, binding himself, his heirs, executors, and administrators, in the sum of $5,000, as follows: "Whereas the above bounden Emery J. Glidden has this day agreed to sell to the said Edson W. Harvey and Julius E. Harvey the following described tract of land [describing it], on condition that the said obligees shall pay the said sum of thirteen hundred and fifty dollars in manner following, to wit, by yearly payments of fifty dollars, the first of said payments to be paid on or before the 25th day of November, 1903, and annual interest on the principal to be paid on or before the 25th day of November of each year: Now the condition of this obligation is such that if the said Edson W. Harvey and Julius E. Harvey shall pay the said sum of thirteen hundred and fifty dollars and interest in manner above described, and shall in the meantime pay all taxes on said premises, keep the buildings reasonably insured for the benefit of the said Emery J. Glidden as his interest shall appear, . . . and the said Emery J. Glidden shall on the completion of the said payments and interest, and the performance of the other agreements and covenants by the said obligees to be performed, make, execute, and deliver, or cause to be made, executed, and delivered, a good and sufficient warranty deed to the said obligees of said premises, and the said obligees shall carry on the said farm in a husbandlike manner and shall

keep the buildings on said premises in reasonable repair, then this obligation shall be null and void, otherwise to remain in full force and virtue."

In December, 1904, one Thatcher requested the plaintiff to loan him $500 with which to purchase the Cutting farm in Newport. The plaintiff agreed to do so if Thatcher would convey the farm to him and allow him to retain two acres of it, the plaintiff to give Thatcher a bond for a deed of the remainder of the farm. Thatcher purchased the farm and conveyed it to the plaintiff on December 31, 1904, for $515 paid him by the plaintiff, who at once gave Thatcher a bond binding himself, his heirs, executors, and administrators in the penal sum of $1,000 to convey said remainder to Thatcher upon the payment of $500 and interest, etc. The condition of the bond is substantially like that of the Harvey bond, excepting that it contains a provision by which the obligor is to allow the obligee to have full possession and control of the premises while the payments are being made.

The Harveys have been in possession of the farm mentioned in their bond ever since its date. Thatcher took possession of the farm described in his bond immediately upon its execution, and he and his assigns have been in possession since. Both farms were taxed to the plaintiff in 1905,—the first one at $2,000 and the last one at $500,—and he or the obligees paid the taxes. Payments of principal and interest have been made and have been indorsed upon the bonds. No note or other obligation was taken by the plaintiff from the obligees. One purpose of the plaintiff in taking the papers in the form described was to avoid being taxed for the $1,350 and $500 paid by him. Another reason was his belief that this course gave him better security than a mortgage would give, and still another reason in the latter case was the obtaining of the two acres of land. The court found that these transactions were in effect mortgages, aside from the fact that in the last case the plaintiff obtained two acres of land for little or nothing. The plaintiff was also taxed in Newport in 1905 for $1,500, money at interest. It was this portion of the tax that he asked to have abated.

*Frank O. Chellis*, for the plaintiff.

*Jesse M. Barton*, for the defendants.

CHASE, J. It is assumed that the money at interest for which the plaintiff was taxed is a portion of the money which he paid when the farms were conveyed to him; otherwise there would be no question of law before the court. One question for consideration, therefore, is whether this money was money at inter-

est within the meaning of the statute, which subjects to taxa-
tion " money on hand or at interest more than the owner pays
interest for, including money . . . loaned on any mortgage,
pledge, obligation, note, or other security, whether on interest or
interest be paid or received in advance." P. S., *c. 55, s. 7, cl. 5.*
This statute makes money at interest a distinct class of taxable
property.    The court's finding, that the transactions were in effect
mortgages, implies that the sums of money advanced by the plain-
tiff upon the conveyances of the real estate to him were in fact
loans upon interest, and that the real estate was conveyed to him
as security for the payment of the loans.    This implication is con-
firmed by his dismissal of the petition, which necessarily shows
that he found that the transactions were loans of money upon
interest, or at least that the plaintiff, upon whom the burden of
proof rested, had failed to make it appear that they were not such
loans.    Viewing the deed and the bond of each case in the light
of the circumstances under which they were made, it is difficult to
see how any other conclusion could be reached, so far as the ques-
tion of taxation is concerned.    Although the money was not
loaned on a mortgage, strictly speaking, and no note was taken, it
was loaned, according to the court's findings, upon a promise
which, if only oral, was a legal obligation and clearly comes within
the provision of the statute above quoted.    If it were held that
the provisions of the bonds do not amount to promises by the obli-
gees to pay the money and interest, as therein set forth, the bonds
as written evidences of the transactions would not exclude other
evidence of such promises, in this action to which a third party is
the defendant.    *Libby* v. *Company*, 67 N. H. 587, 588; *State* v.
*Newman, ante*, 10.

" In this state, the taxability of money at interest is not an open
judicial question.    Whether the assessment of money at interest is
a process of ascertaining the lender's or the borrower's just share
of the public expense, or an exceptional, double, or otherwise
wrongful taxation of the borrower, . . . permitted, not re-
quired, by an erroneous constitutional construction established by
legislative usage and judicial recognition, we need not inquire.    If
the assessment of a creditor for his interest-bearing loan of money
is, in effect, either a double taxation of his debtor, or a taxation of
the debtor for property which, by conveyance or destruction, has
ceased to be his, . . . such taxation is sustained by the
authority of precedent . . . too firmly established to be over-
thrown by any other authority than that of making law." *Mor-*
*rison* v. *Manchester*, 58 N. H. 538, 551, 552.    It would seem that,
by the transactions under consideration, the borrowers of the
money (obligees) are not doubly taxed, in any sense, since the

rate of interest they are to pay on the loans (apparently, that fixed by law) appears to have been agreed upon with the understanding that taxation of the money would be avoided. If the money escapes taxation, they will gain nothing by the fact, and if it does not escape, they will lose nothing; their interest charges will be the same in either event. The tax falls upon the plaintiff where, according to the law, it belongs.

The plaintiff further says the money is not taxable because the real estate he holds as security for its payment was taxed to him, and the taxation of the money would duplicate this tax. Real estate also is a distinct class of property specifically subjected to taxation. P. S., c. 55, s. 2. It is taxable to " the person claiming the same, or to the person who is in possession and actual occupancy thereof, if such person will consent to be taxed for the same." P. S., c. 56, s. 14. The taxes upon the real estate described in the plaintiff's bonds were properly assessed against him, as he held the title; but as the obligees were in possession, the taxes might lawfully have been assessed directly against them with their consent. By the terms of the bonds, the obligees are bound ultimately to pay the taxes, and it is of little consequence to them or the plaintiff whether the assessment is made against the one or the other. If the taxes are assessed against the plaintiff and he pays them, he does so not on his own account, but on account of the obligees, and has a claim against them for reimbursement. He pays what are in reality their taxes—not his. His money was not merged in the real estate, but in the obligee's promises secured by conveyances of the real estate. Taxation of the real estate to him was not taxation of his money, nor was the taxation of the money taxation of the real estate. As found by the superior court, the relations between him and the obligees, so far as they concerned taxation, were in effect like those between a mortgagee and mortgagor in ordinary mortgages of real estate. The taxation of mortgaged real estate and of the loan secured by the mortgage is not double taxation (*Nashua Savings Bank* v. *Nashua*, 46 N. H. 389, 399, 408; *Morrison* v. *Manchester*, 58 N. H. 538; *Sawyer* v. *Nashua*, 59 N. H. 404, 406; *Boston etc. R. R.* v. *State*, 62 N. H. 648); and the reasons for this holding lead to the same conclusion when applied to the facts of this case. The plaintiff is not doubly taxed in fact, unless the taxation of money at interest is in all cases double taxation, in which case, as has been seen, the legality of the tax is not an open question. *Morrison* v. *Manchester*, *supra*. He is not in position to set up the plea of double taxation on other grounds with any degree of legal or moral force.

*Exception overruled.*

All concurred.