Cheshire, ⎱
April 2, 1912. ⎰

## BELLOWS FALLS CANAL CO. *v.* WALPOLE.

Where the right to use the power derived from a dam and water privilege has been conveyed to sundry persons for terms of years and in perpetuity by instruments which provide for the payment of annual rentals by the grantees and for a retention of ownership and control of the physical property by the grantor, and the selectmen of the town in which the property is located have received neither actual nor constructive notice of the existence and nature of the subsidiary interests, the estate out of which the several easements were carved is taxable to the owner for its full value, on the ground that he was in the possession and occupation thereof and consented to be taxed for the same.

PETITION, for the abatement of taxes assessed for the year 1910 upon a certain dam, flowage, and water rights and privileges, situated in the town of Walpole, against the Bellows Falls Canal Company as owner. Trial by the court. Transferred from the October term, 1911, of the superior court by *Plummer*, J.

The plaintiffs own a dam across the Connecticut river between Walpole, New Hampshire, and Bellows Falls, Vermont, the flowage rights connected therewith, some real estate at the Vermont end of the dam together with a canal on the Vermont side through which water is brought to the mill gates, and a right to build a dam in New Hampshire upon land at the easterly end of the dam. The water-power is all used in Vermont under certain instruments executed by the plaintiffs with various parties prior to April 1, 1910.

Subject to the defendants' exception, the plaintiffs offered in evidence certain instruments, which for convenience are designated as class A, as follows: Bellows Falls Canal Company to Adams Gristmill, February 28, 1832; Bellows Falls Canal Company to J. T. Moore, September 2, 1872; Bellows Falls Canal Company to Moore & Thompson, December 31, 1881; Bellows Falls Canal Company to Bellows Falls Electric Company, August 13, 1897 (on lease form as in class B, "to their use forever" being inserted in place of ninety-nine years); Bellows Falls Canal Company to International Paper Company, January 10, 1898. Subject to the defendants' exception, the plaintiffs also offered in evidence certain instruments, which for convenience are designated as class B, as follows: Bellows Falls Canal Company to Rockingham Paper Company, December 31, 1881; Bellows Falls Canal Company to Robertson Paper Company, November 29, 1886; Bellows Falls Canal Company to Wyman,

Flint & Sons, November 29, 1886.   With the single exception noted above, the instruments in class A purport to be conveyances in fee of certain parcels of land in Vermont, together with mill privileges described in proposals annexed and to be used as therein set forth, the grantees paying therefor a perpetual yearly rental.   The instruments in class B purport to be leases of land in Vermont, with mill privileges described in the annexed proposals, for terms of ninety-nine years, the lessees paying therefor an annual rental.   The annexed proposals particularly describe the extent of each privilege, stipulate the terms and conditions upon which the leased and granted rights are to be exercised, and provide that all taxes are to be paid by the lessees and grantees.

The defendants offered to show that none of the foregoing instruments are recorded in New Hampshire, but are on record in the office of the town clerk at Bellows Falls, and that the only knowledge possessed by the selectmen of Walpole for 1910, prior to April 1 of that year, as to the situation between the Bellows Falls Canal Company and the other parties to the instruments, was that the latter were openly using the land in Vermont and the water drawn from the canal in Vermont, as lessees or otherwise.   The evidence was excluded, and the defendants excepted.

None of the grantees and lessees named in the instruments ever made any return to the selectmen of Walpole of any interest in any part of the water-power.   The return of the Bellows Falls Canal Company recited simply "property."   Exclusive of the subject-matter of the instruments in class A, and of any interest in or created by those instruments, the taxable value of the plaintiff's property in Walpole did not exceed $150,000.   The defendants moved to exclude from the case the evidence offered as to the instruments hereinbefore referred to.   The motion was denied *pro forma,* and the defendants excepted.   From the statements of counsel, it appeared probable that a full hearing on all questions of fact as to the value of the property involved in the suit would be protracted, complicated, and expensive.

Upon the foregoing facts, at the request of the parties and without a hearing on the merits, the court ruled *pro forma* that, under the instruments in classes A and B, the plaintiffs were not taxable for any of the property described therein, or on any interest in the property created thereby, and that their petition for abatement should be granted to the extent of $150,000, to which ruling the defendants excepted; and the questions raised by this and the other

exceptions were reserved without hearing any further evidence as to the value of the plaintiffs' property, it being agreed that the case should stand for further hearing on the facts if the court's ruling should be held incorrect.

*Streeter, Demond & Woodworth* (*Frank J. Sulloway* orally), for the plaintiffs.

*Taggart, Tuttle, Burroughs & Wyman* and *Orville E. Cain* (*Mr. Wyman* orally), for the defendants.

BINGHAM, J.    This is an appeal by the plaintiffs from a tax assessed against them in 1910 upon certain real estate situated in the town of Walpole.   It appears that prior to the conveyances and leases referred to in classes A and B, the plaintiffs were the owners of the reservoir created by the dam and flowage rights on the Connecticut river at Walpole, and that they were such at the date of the assessment of the tax in question, except to the extent that they had parted with certain rights or easements in the property by the above mentioned conveyances.   It is because of the creation of these alleged rights or easements in the reservoir that the plaintiffs contend they should not be taxed for the full value of the reservoir, and that they are entitled to an abatement to the extent that the easements entered into the valuation which was made the basis of the tax.

If we assume for the purposes of this case that under the conveyances in class A the grantees acquired perpetual easements in the plaintiffs' reservoir, which upon request the selectmen could be required to appraise and assess separately to the respective owners (P. S., c. 58, s. 2), this would not establish that the tax was improperly assessed against the plaintiffs.

In this state real property is taxable to the "person claiming the same"; that is, to the resident owner, or to the resident "who is in the possession and actual occupancy thereof, if such person will consent to be taxed for the same."   P. S., c. 56, s. 14.   The burden of proof was upon the plaintiffs.   *Glidden* v. *Newport*, 74 N. H. 207, 209.   It was therefore incumbent upon them to show, not only that they had parted with certain rights or interests in the property, but also that they were not in the possession and occupation of the property and did not consent to be taxed for it.   This they failed to do.   In fact, their evidence and that offered by the de-

fendants tended to prove that they were in the possession and occupation of the property and consented to be taxed for it. The record title was in them so far as the registry of deeds disclosed; they returned an inventory of the property, without notifying the selectmen that they had parted with any interests in it; and the grantees made no claim of ownership so far as the selectmen knew, and filed no inventory with them as required by chapter 91, Laws of 1909. It also appears from the proposals, which are part and parcel of the conveyances, that the plaintiffs covenanted and agreed to construct and forever keep in repair and free from obstructions the principal canals leading from the dam, and to forever maintain the dam so as to turn the water into the canals, which obligations of necessity required the plaintiffs to retain the possession and occupation of the property.

In view of this situation and of the further fact that the grantees agreed with the plaintiffs to assume and pay all the taxes assessed upon the premises conveyed, in addition to the yearly rental that was reserved, and that the law gives the plaintiffs a lien upon the granted premises for the taxes assessed thereon against them, with a right of action to recover the same (P. S., c. 56, s. 30), we are of the opinion that justice does not require that the taxes in question should be abated. *Granite State Land Co.* v. *Hampton, ante,* 1, 7, 8; *Morrison* v. *Manchester,* 58 N. H. 538, 555; P. S., c. 59, s. 11.

The defendants' exception to the evidence offered by the plaintiffs is overruled; their exceptions to the refusal to receive the evidence offered by them and to the ruling of the court are sustained.

*Case discharged.*

All concurred