In re MIDLAND OIL CO.

SPELL et al. v. MAYFIELD.

(Circuit Court of Appeals, Fifth Circuit. December 10, 1924.)

No. 4404.

1. Bankruptcy ⊂⊃288(1)—Court has summary jurisdiction to determine adverse claims to property in possession of trustee.

On a finding by the bankruptcy court, that property has been in the constructive possession of a trustee since the bankruptcy, it has jurisdiction in a summary proceeding to determine adverse claims thereto, whether of title or lien.

2. Mines and minerals ⊂⊃80—Oil lessee entitled to remove machinery and supplies on forfeiture of lease.

On the forfeiture by decree of court of an oil lease, the lessee has the right to remove his machinery and other like property from the leased premises, where judgment is silent as to such property and lease authorizes removal.

Petition to Superintend and Revise from the District Court of the United States for the Western District of Louisiana; Benjamin C. Dawkins, Judge.

In the Matter of the Midland Oil Company, bankrupt; R. L. Mayfield, trustee. Petition of T. S. Spell and others to revise order of District Court. Affirmed.

C. Huffman Lewis, of Shreveport, La., for petitioners.

J. S. Atkinson and Alex F. Smith, both of Shreveport, La., opposed.

Before WALKER and BRYAN, Circuit Judges, and CLAYTON, District Judge.

CLAYTON, District Judge. This is a petition under section 24b (Comp. St. § 9608) to superintend and revise the action of the District Court in bankruptcy. Of course the court here is limited to the consideration of questions of law. 1 Collier on Bankruptcy (13 Ed.) 824, and cases cited. However, for the understanding of the case, the facts are now stated:

Spell, one of the petitioners, executed an oil and gas lease to Pardue, and it was duly conveyed to the American National Oil Company, which became bankrupt in January, 1921, and its trustee assigned the lease to Ratcliff, who in turn transferred it to the Midland Oil Company. On September 21, 1921, Spell entered suit in the state court against the Midland Oil Company for annulment of the lease because of failure to operate, which was required by its terms. That suit was dormant until December 16, 1922, when Spell obtained judgment canceling the lease. Between the institution of the suit in the state court, September 21, 1921, and the judgment of forfeiture, December 16, 1922, namely, on November 16, 1922, the Midland Oil Company was put into involuntary bankruptcy, and adjudged a bankrupt January 10, 1923. Mayfield, respondent here, was made the receiver, and at the first creditors' meeting was elected trustee. In the suit to annul the lease no cognizance was taken of the bankruptcy proceedings, nor was Mayfield, trustee, a party, and there was no defense. On January 15, 1923, Spell leased the property covered by the original lease to Ranes, who assigned it to the Double II Oil Company, one of the petitioners, and who joined with Spell in this proceeding in the District Court.

On May 17, 1923, Mayfield, the trustee of the Midland Oil Company, the bankrupt, petitioned the District Court, where the bankruptcy matter was pending, and alleged that the bankrupt and its predecessors in title had spent large sums of money in the development of the property, and had placed the drilling machinery, supplies, pipes, casings, and tubings thereon, and that the bankrupt estate was at the time of the filing of the petition the owner thereof; also that the bankrupt and its predecessors

in title had been in possession of the leased premises at all times since March 21, 1918. The prayer was for a cancellation of the second lease mentioned above as a cloud on the title of the bankrupt estate, and for general relief.

In their answer to the petition, Spell, Ranes, and the Double H Oil Company denied that the bankrupt had spent any money in the development of the property, or that it had placed thereon any movable property including drilling machinery, etc., but admitted that the bankrupt and its predecessors in title "had drilled some wells on said property during the many years which they held it," and in further answer averred that said movables had been abandoned on the premises. The answer also set up that Spell and others, the petitioners here, had been in possession of such property since the date of the rendition of the judgment of forfeiture, in December, 1922.

The District Court, on the issues raised, refused to cancel the second lease, declaring it to be valid, but, as incidental to the controversy resulting from the trustee's petition, held that the title to the movable property, the drilling machinery, etc., placed on the leased premises by the bankrupt and his predecessors in title, had not been lost to the estate by the cancellation of the first lease, and ordered, further, that Mayfield, trustee, be allowed to remove such property, drilling machinery, etc. Nothing was said about the movable property in the proceedings in the state court to cancel the lease of the land. The record does not disclose any evidence that the state court or any one under its authority had ever had possession of the movable property involved.

[1] It was objected in the bankruptcy court, and is now urged, that such court was without jurisdiction to determine in the summary proceedings the ownership and disposition of the drilling machinery, and the like. The trial court upon this issue of fact, as to the possession of such movable property, which was raised by the allegations of the petition of the trustee and the denials in the answer of Spell and his corespondents in the proceeding, found in favor of the trustee. Therefore it follows as a matter of law, the drilling machinery, etc., being in the custody of the trustee and therefore of the court, that the court had jurisdiction and is rightfully administering such property as assets of the bankrupt estate.

3 F.(2d)—8

Comment or citation of authority is hardly necessary; for it is settled that the bankruptcy court has exclusive jurisdiction to determine claims to property in its possession. This rule extends to both actual and constructive possession, and covers property held by or for the bankrupt, and, further, that court had jurisdiction to determine by plenary action or summary proceedings, according to the nature of the case, all adverse or conflicting claims to the property whether of title or lien. Orinoco Iron Co. v. Metzel, 230 F. 40, and authorities cited on pages 44 and 45, 144 C. C. A. 338, 1 Collier on Bankruptcy (13th Ed.) 780, 781, note 150.

[2] Under the issues and facts of the case, the District Court was correct in ruling that the title to the movable property had not been lost to the bankrupt estate because of the forfeiture of the lease of the land. Even the judgment of forfeiture was silent on the subject, and, moreover, the lease contract itself provided "the right to remove at any time from the premises any and all property which may have been placed thereon by said lessee." But if the right to remove the machinery and other like property from the leased premises had not been specially stipulated in the lease, it seems to be true that upon the forfeiture of the lease the lessee had the right to remove such fixtures without the right having been expressly reserved. 1 Law of Oil and Gas, Thornton, 348. And the Supreme Court of Louisiana in S. O. Co. of La. v. Barlow, 141 La. 52, 74 So. 627, where under the contract it was admitted that the lessee had the right to remove the machinery, etc., from the leased premises, it was said in the opinion that "It is incredible that any oil company should intend to present to a lessor $1,400 worth of pipe, after it had expended $10,000 or more in drilling a well into salt water. And so it appears to us. No doubt, if the lessor defers the removal of his pipe for so long a time as to authorize the belief that he has abandoned it, a court would so hold, but counsel for plaintiff quote Thornton and Archer to the effect that the lessor is entitled to a reasonable time after the expiration of his lease within which to take such action (as also Perry v. Acme Oil Co., 44 Ind. App. 207, 88 N. E. 859), and we approve that doctrine."

The petition is denied and the decree and order of the District Court, being free from error, is in all things approved and affirmed.