## ARMSTRONG v. FEDERAL SUPPLY CO. et al.   (No. 780.)

Court of Civil Appeals of Texas.   Waco.
April 11, 1929.

Rehearing Denied May 23, 1929.

H. O. Jennings, of Marlin, for appellant. T. B. Bartlett and Oltorf & Oltorf, all of Marlin, and Jos. W. Byers, of Mexia, for appellee.

GALLAGHER, C. J. This suit was instituted by the Federal Supply Company, a corporation, one of the appellees herein, against J. E. Armstrong, appellant, and C. C. Curtis, another appellee herein, to recover judgment against said Curtis on a promissory note in the principal sum of $702, and to foreclose two chattel mortgages given by him on a well-drilling outfit and certain well casing. Said supply company further alleged in its petition that appellant was engaged in removing said casing from a well in which it had been placed by Curtis, and that he would remove the same therefrom and from the premises and would dispose of the same unless restrained, and prayed for injunctive relief against appellant. The court granted an injunction restraining appellant from removing casing from the well and from the premises and from disposing of the same or interfering therewith in any way.

Appellant in his answer alleged that said well had been drilled by Curtis on land leased from the Peacock estate; that said lease had expired; that in the process of drilling said well Curtis had placed on said premises at the site of said well a certain derrick and well-drilling equipment, including 2,500 feet of casing; that said lease had expired and that Curtis had abandoned said well and the

leased premises; that by reason of said abandonment all said property had reverted to said estate. Appellant claimed title to one-half interest in said casing under an alleged conveyance of the whole thereof by the trustee of the Peacock estate to R. F. Heflin, and of said undivided one-half interest therein from Heflin to him. He also alleged in the alternative that Curtis on abandoning said well failed to plug the same and remove the casing in controversy therefrom; that the trustee of said estate employed Heflin to perform said service and conveyed said casing to him as compensation therefor; that Heflin had employed him to perform such service and conveyed to him a half interest in said casing to cover his cost and expense in doing such work; that he did pull said casing and plug said well at a cost of $750. He prayed for judgment for title and possession of said casing, or, in the alternative, for the cost of pulling the same and plugging said well and for a foreclosure on said casing to secure his recovery.

Appellee Curtis admitted that his original lease had expired, but he alleged that he had negotiated a new lease on said premises and on surrounding lands; that it was agreed between him and the trustee of said estate that he was to drill another well near by, and, if such other well produced oil or gas, that he was to drill the well here involved deeper and utilize the same. He especially denied that he had abandoned said well or his drilling outfit or said casing. Heflin intervened and adopted the pleadings of appellant.

The case was tried before the court and resulted in a judgment in favor of appellee Federal Supply Company for its debt, with interest, attorney's fees, and costs, and for a foreclosure of a mortgage lien on all the property described in its said mortgages; and a further judgment in favor of Curtis against both appellant and intervener for all of said property, and especially for the casing in controversy, and denying both Armstrong and Heflin any title thereto or lien thereon. Armstrong alone has appealed.

## Opinion.

The court found that Curtis had not abandoned the well, nor the casing therein; that he had a reasonable time to remove said casing and that such time had not elapsed at the time of the institution of this suit; that he had not therefore lost his right and title to said casing. Appellant by his second proposition assails said findings and asserts that they are without support in the evidence. Appellant contends in this connection that Curtis was allowed by law only a reasonable time after the expiration of his lease in which to pull his casing from said well and remove the same from the premises; that the testimony showed conclusively that a reasonable time for such removal had elapsed; that all his right, title, and interest in and to said

casing had vested in said estate prior to the conveyance thereof by the trustee to said Heflin, under whom appellant claimed.

The testimony introduced showed that Curtis held a lease on said premises from said estate which expired January 10, 1927; that it was expressly stipulated in said lease that the lessee should have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing; that several years before the expiration of said lease Curtis had begun the drilling of said well; that he was hampered continually by lack of funds to prosecute the work; that the drilling of the same had been greatly retarded and the expense of drilling greatly increased by mishaps which occurred in the course of drilling; that he had under a succession of difficulties succeeded in drilling said well to a depth of 3,000 feet and had cased the same to that depth; that further drilling would on account of existing conditions be attended with more than ordinary expense; that he had worked on said well until within a short time of the expiration of said lease; that he had left his drilling outfit at the well; that he had negotiated a new lease with the trustee of the Peacock estate and with the owners of surrounding territory; that the Peacock lease had been prepared and the other leases agreed upon, but that delay in securing the execution and delivery of said other leases had been caused by the death of one of the parties and litigation over her estate, and by other circumstances beyond his control; that it was agreed between him and said trustee that the new lease should be delivered to him when the other leases were ready for delivery; that it was agreed between him and said trustee that after he had secured such leases he should drill a new well in that immediate territory; that, if such new well proved to be a producer of oil or gas, he should drill the well in controversy deeper and utilize the same. The testimony further showed that the site of said new well had been selected, with the approval of said trustee, and some preliminary work preparatory to drilling the same had been done; that some progress had been made toward securing the execution and delivery of such other leases.

The trustee of the Peacock estate testified that he saw Curtis around Marlin all during the year 1927; that Curtis was in Oklahoma during the latter part of the year; that he received a letter from him there and that he at that time knew his Oklahoma address; that said well was running salt water and had been for some time; that he did not at first object thereto, but that an adjoining landowner had erected a dam, which obstructed the flow of said water and caused the same to damage the land of said estate; that he did not see Curtis about that time and he never had asked him to stop the flow of salt

water; that he asked Heflin if he could stop the flow of water and that Heflin said he could; that he employed Heflin to plug the well; that he expected him to do what was necessary to accomplish that purpose, but that he never said anything to Heflin about pulling the casing; that he did not have any agreement with him about compensation for such service; that Heflin or Armstrong worked on the well, but did not stop the flow of salt water therefrom; that he did not at that time claim to own the casing in said well nor any of the outfit or equipment used in drilling the same.

Heflin gave notice to the proper representative of the Railroad Commission of intention to plug said well. Said notice was given in the name of said trustee. It was dated December 17, 1927, and stated that such work was to begin December 26, 1927. Armstrong began to pull the casing from the well on or about said date, and after pulling same made an ineffectual attempt to plug the well and stop the flow of said water. This suit was instituted on January 6, 1928, and Armstrong was enjoined from further interfering with the mortgaged property. After the institution of this suit the trustee of said estate conveyed all the right, title, and interest of the same in said casing to Heflin. The trustee testified in that connection that at the time he made said conveyance to Heflin he was told that he had some interest in the casing and that it was his intention that Heflin should get his pay for work done out of the same. He further testified that cordial relations existed between him and Curtis. Curtis testified that he had never abandoned said well; that he left his entire drilling outfit in place thereat; that at the time he ceased work thereon he had a conversation with said trustee; that the salt water was flowing from the well then; that he offered to put a temporary plug in the well and stop such flow, but that the trustee told him merely to turn it into the ditch; that he placed some of his tools in the trustee's barn and discussed with him his plan for drilling the new well and resuming work on the old well in event the new well proved a producer. He further testified that he was proceeding diligently to secure the execution and delivery of the leases promised him on the surrounding property and was making progress thereat. He further testified that no complaint of said salt water had ever been made to him; that he had never been requested to stop the flow of the same and that he had never been notified that anybody intended to plug said well; that he saw Heflin in Marlin on December 25, 1927, the day before Armstrong began to pull said casing; and that Heflin did not say anything to him about the matter. Heflin's testimony was slightly more favorable to appellant on some points. A recital of the same is unnecessary on the issue of whether there is evidence to sustain the findings of the court.

The material issue here presented is the title to the casing in place in said well on December 17, 1927, when Heflin advised the plugging of the well and undertook to perform that service. Such casing was, under the authorities, during the term of the lease a trade fixture belonging to Curtis. It was subject to removal at any time under the express terms of his lease. Such provision has been uniformly held to authorize the removal of casing within a reasonable time after the expiration of the lease. Southwestern Oil & Gas Co. v. Kimball Oil & Development Co. (Tex. Civ. App.) 224 S. W. 1111, 1112, par. 1; Terry v. Crossway (Tex. Civ. App.) 264 S. W. 718, 720, par. 9; Standard Oil Co. v. Barlow, 141 La. 52, 74 So. 627, 628; Shellar v. Shivers, 171 Pa. 569, 33 A. 95, 96; 2 Thornton on Oil & Gas, pp. 1342 et seq., § 653; Summers on Oil & Gas, pp. 644, 645, § 210; 40 C. J. p. 1101, § 727. What constitutes a reasonable time after the expiration of the lease for the removal of casing is a mixed question of law and fact. H. & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 421, 108 S. W. 808, 809. The term "a reasonable time" has been variously defined. Among the definitions given in 33 Cyc. pp. 1567, 1568, we find the following:

"A reasonable time, looking at all the circumstances of the case * * * such length of time as may fairly and properly and reasonably be allowed or required, having regard to the nature of the act or duty and to the attending circumstances * * * that time which as rational men the parties to a contract ought to have understood each other to have in mind; that time which preserves to each party the rights and advantages he possesses and protects each party from losses that he ought not to suffer."

The authorities on what constitutes a reasonable time in such cases are not numerous. The Supreme Court of Louisiana, in Standard Oil Co. v. Barlow, supra, held that an attempted removal after the expiration of eight months was within a reasonable time. Our Court of Civil Appeals for the Ninth District, in Terry v. Crosswy, supra, held the right of removal had been lost by failure to exercise the same within four or five years after ceasing operations. The Supreme Court of Pennsylvania, in Shellar v. Shivers, supra, held the right of removal was lost after the expiration of more than five years from the completion of a dry hole, and approximately four years after the termination of the lease. The facts in this case have been heretofore stated in detail. They explain the reason for the delay and tend to show that by mutual consent of Curtis and said trustee his rights in the premises were to remain in statu quo during the pending of negotiations for a renewal of his lease. They are ample to support the finding of the court here under consideration.

Appellant by his third proposition complains of the action of the court in refusing

to render judgment in his favor against Curtis for the cost and expense incurred by him in connection with his attempt to pull the casing and plug said well, with foreclosure of a statutory lien on said casing to secure the same. Said right of recovery and lien are claimed under the provisions of article 6005 of our Revised Statutes. Said article provides that an owner of such a well about to abandon the same shall, *before withdrawing the casing therefrom*, securely fill said well in the manner therein prescribed. The duty of filling such well is by the terms of said article imposed first upon the owner of the well, and, if such duty is not performed by him, then upon the owner of the land on which such well is situated. Said article further provides that, if both the owner of the well and the owner of the land shall fail to efficiently perform the duty imposed thereby, any person, after written demand therefor to either of such respective owners, may lawfully enter the premises, take possession of such well, and comply with the requirements thereof. Said article in that connection further provides that the reasonable cost and expense of such compliance shall forthwith be paid by the owner of the well, or, on his default, by the owner of the land, and declares that the amount of such reasonable cost and expense shall be a lien upon the fixtures, machinery, and leasehold interest of the owner of the well, as well as upon the title and interest of the landowner in the land upon which the same is situated, and may be recovered and enforced in the order named.

Appellant testified that, under an agreement with Heflin for a half interest in the casing as compensation for his services, he entered upon the premises and began to pull the casing from said well; that he did succeed in pulling more than 2,000 feet thereof, but was unable to pull the remainder; that he then attempted to plug said well to stop the flow of salt water therefrom; that his effort to do so was ineffective; that the reasonable cost of the work done by him in such attempts was $550; that he was unable to state the probable cost of effectually stopping the flow of water; that it might cost $100 and it might cost $1,000 to do so. He attributed his failure to stop the flow of water to the injunction sued out by appellee Federal Supply Company. According to his testimony, any further attempt to pull the casing from the well had been abandoned before he attempted to plug the same to stop said flow of water. Said injunction merely restrained him from removing any of said casing from the well or from the premises and from interfering in any way with any of the personal property covered by the mortgages sued on. Nothing therein forbade or restrained him from proceeding to plug said well and stop the flow of water therefrom.

The article of the statute relied on by appellant does not in terms require a party, after plugging or filling a well as therein prescribed, to draw the casing therefrom. Neither does it in terms provide for the recovery of the reasonable cost and expense incurred in doing so. It does expressly provide that the work of plugging or filling such well shall be done before the casing is drawn. Apparently, so far as the purposes of said article are concerned, it is immaterial whether any attempt is thereafter made to draw and salvage such casing. Appellant's estimate of the reasonable cost and expense of his work covered both the drawing of the casing and his attempt to plug the well. According to his own testimony, he failed to effectively plug said well and stop the flow of water therefrom. He was seeking a recovery against Curtis for the cost and expense of attempting to do so. Said article does not provide for the recovery of the cost and expense incurred in an ineffectual attempt to comply with its requirements. Curtis was in no way responsible for the suing out and service of said injunction. The issuance and service thereof did not affect his right to resist a recovery by appellant for an ineffective attempt to plug said well. We do not think that appellant could, under the facts of this case, recover any sum against Curtis, and said proposition is overruled.

Our holdings on the propositions discussed render consideration of appellant's first proposition unnecessary.

The judgment of the trial court is affirmed.