## HUBERT v. COLLARD.

### No. 8930.

Court of Civil Appeals of Texas. Austin.

May 15, 1940.

Rehearing Denied June 12, 1940.

Wallace & Wallace, of Cameron, for appellant.

Fred S. Dudley, of Fort Worth, for appellee.

BAUGH, Justice.

Appeal is from a judgment, after trial to a jury on special issues, in favor of Collard, plaintiff below, against Hubert, defendant below, in the sum of $225 for conversion by Hubert of oil well casing belonging to Collard.

The following substantial facts appear: In April, 1936, Hubert executed an oil and gas lease on a tract of land owned by him in Bell County to Collard. Collard assigned the lease to Summers on April 24, 1936, who employed Hickey & McClung to drill a well. Collard loaned them the casing in question in May, 1936, which they placed in the well; but did not drill it to the depth specified in the lease, abandoned it in June, 1936, removed all the machinery from the premises, leaving the casing in the well. Hickey & McClung failed to plug the well as required by law (Art. 6005, R.C.S. 1925) and the rules of the Railroad Commission, and on July 7, 1937, Hubert, the landowner, had the well plugged and the casing pulled at his own expense and sold the casing. Collard, the owner of said casing, filed this suit on December 3, 1938, against Hubert for damages for conversion of his property. Among other pleas, Hubert pleaded limitation under Art. 3999, R.C.S. 1925. In answer to issues submitted the jury found the value of the casing at $375; cost of pulling it from the well at $150; and that three months would have been a reasonable time in which to remove the casing after the well was abandoned in June, 1936. The court rendered judgment for plaintiff for $225; hence this appeal.

Appellant's first contention is that appellee's failure to file suit for more than two years after the loan of the casing was made, or more than two years after the expiration of a reasonable time for removing it from the well as found by the jury, his title thereto was extinguished under the provisions of Art. 3999, R.C.S. This Article provides: "Where any loan of goods or chattels [chattels] shall be pretended to have been made to any person with whom, or those claiming under him, possession shall have remained for the space of two years without demand made and pursued by due process of law on the part of the pretended lender; or when any reservation or limitation shall be pretended to have been made of a use of property, by way of condition, reversion, remainder or otherwise in goods and chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers, of the persons aforesaid so remaining in possession, to be fraudulent within this title, and that the absolute property is with the possession, unless such loan, reservation or limitation of use of property were declared by will, or by deed or other instrument in writing, duly acknowledged or proved and recorded."

It may be seriously doubted if this Article has any application to the facts of the instant case. Appellee never loaned the property to appellant nor voluntarily placed it in his possession. The loan was to Hickey & McClung, and the property placed in their possession. They did not claim it adversely to appellee, nor did they sell it to anyone. They merely abandoned it in the well on the premises of appellant. Nor did appellee seek a recovery of his property from nor any relief against the purchasers thereof.

When the well was abandoned it became the duty of the owner or operator thereof, whether Hickey & McClung, the drillers, or Summers, assignee of the lease, "before drawing the casing therefrom" to plug the well. In the event of their failure to do so this duty is imposed by statute (Art. 6005, R.C.S.) on the owner of the land, and he is given a lien upon the fixtures and machinery on the premises to the extent of the expense incurred in doing so, which he may enforce in any court of competent jurisdiction. Appellee, who owned the casing, was not required to plug the well. Nor did he have a right to remove the casing from the well until it was plugged. Appellant did not discharge that duty until July 7, 1937, at which time he merely acquired personal possession of the casing for the first time, and at which time he sold it. Manifestly he had no title to the casing at that time even under Art. 3999, and his sale of it without the knowledge or consent of the owner amounted to a conversion. The placing of the cas-

ing in the well did not make it a part of the realty. Moore v. Carey Bros. Oil Co., Tex.Com.App., 269 S.W. 75, 39 A.L.R. 1247; Id., Tex.Com.App., 272 S.W. 440, 442, 39 A.L.R. 1247; Pearson v. Black, Tex.Civ. App., 120 S.W.2d 1075, 1079. And as stated in the case last cited, "We know of no rule or principle of law to the effect that abandoned personal property becomes the property of him upon whose land it happens to be left." That, we think, is the case here presented. No adverse claim to said property by appellant was made until July, 1937, at which time he sold it without authority of the owner, which amounted to a conversion. The only cause of action appellee had against him was for conversion. Since appellee no longer owned the lease, he was not required to plug the well, and in view of the provisions of Art. 6005, he had no right to remove the casing until the well was plugged. This duty rested first upon the operator, and if he failed to do so, upon the landowner, who did not discharge it until July 7, 1937. The right of appellee to repossess the casing and remove it from the premises did not arise, therefore, until that date. Limitation against his ownership would consequently begin to run only from that date, and not from the date of abandonment by the drillers in June, 1936.

■ Appellant next contends that this casing was a trade fixture placed upon the leased premises, which should have been removed upon the expiration of the lease (which appellant contends occurred in June, 1936), or within a reasonable time thereafter; and that not having been so removed, it became the property of the landowner. Citing particularly Armstrong v. Federal Supply Co., Tex.Civ.App., 17 S.W. 2d 170, and Meers v. Frick-Reid Supply Corp., Tex.Civ.App., 127 S.W.2d 493. See also for a general discussion 19 Tex.Jur., §§ 23–25, pp. 730–732.

As against an innocent purchaser, or as against any claim Summers or Hickey & McClung might have made, had they owned the casing, this contention might be correct. Or had appellee been the owner or operator of the lease at the time it might apply as against him. But no such case is here presented. It must be borne in mind that such casing was not a permanent fixture, nor improvement, nor a part of the soil. Nor would its removal in any manner injure the freehold, nor cause any loss to the owner of such freehold. If appellee, in-

stead of loaning this property to Hickey & McClung, had sold it to them, taking a note therefor and a mortgage thereon to secure its payment, we think there can be no doubt that as against appellant appellee's lien would have been valid, enforceable, and superior to any claim to the casing appellant could have asserted on July 7, 1937, when he pulled the casing from the well. Moore v. Carey Bros. Oil Co., Tex.Com. App., 269 S.W. 75, 39 A.L.R. 1247. His rights as owner of the title would manifestly be greater than if he had merely had a lien on the property.

■ The jury found that 90 days after abandonment of the well would have been a reasonable time in which to remove said casing from the well. No objection was made to the submission of this issue. It now seems clear, however, that what constitutes a reasonable time for such removal is a mixed question of law and fac See Meers and Armstrong cases, supra. The court apparently ignored this finding, and, we think, properly so. This question, if applicable to the instant case, is referable to the time when appellee's right to remove the casing arose. This, as above stated, was on July 7, 1937. Under the undisputed facts, therefore, we think this finding of the jury was immaterial.

■ By cross assignment appellee urges that appellant was a willful trespasser and therefore not entitled to a deduction of the cost of pulling the casing; and that he should have had judgment for the full $375. This contention is not sustained. Under the authorities above cited, appellant was guilty only of conversion; and the measure of appellee's damages was the market value of the property at the time and place of conversion. The issue submitted without objection, and obviously at the instance of appellee, was the reasonable market value of the casing "after the same had been pulled from the well on defendant's land". The market value of the casing in place in the well would manifestly have been different. Had appellee removed the casing himself he would have been compelled to pay the cost of the pulling it, upon failure of Hickey & McClung to do so. The cost of pulling it might have been a proper charge against Hickey & McClung, but they are not parties to this suit, and appellee sought no damages against them. Appellee cannot, therefore, complain of an item of expense

which he would necessarily have incurred had there been no conversion, and had he repossessed the property himself.

Finding no error the judgment of the trial court is affirmed.

Affirmed.