COX et al. v. RHODES et al.
No. 4716.

Court of Civil Appeals of Texas.
El Paso.

June 1, 1950.

Rehearing Denied June 5, 1950.

McCampbell, Wood & Kirkham, and Dean B. Kirkham, all of Corpus Christi, for appellants.

Jesse J. Lee, Houston, Neel, King & Rachal, Fischer, Wood, Burney & Glass, and Robert B. Wallace, all of Corpus Christi, for appellees.

McGILL, Justice.

This is an appeal from a judgment of the District Court of Nueces County, 28th Judicial District. The suit was brought by appellants, who were remote assignees from the lessee in an oil and gas lease dated July 13, 1936, executed by C. C. Miller as Guardian of the Estate of Mrs. Nannie M. Webb, a non compos mentis, as Lessor, to the Texas Company as Lessee, covering approximately seventy acres of land in Section 107 of the George H. Paul subdivision of the Driscoll Ranch in Nueces County. Appellees, who were defendants in the trial court, are the heirs of Mrs. Nannie M. Webb, deceased, and lessees under a lease dated March 18, 1948, by which the heirs leased the same property to such lessees. Appellants sought to recover damages for the conversion of certain casing located in an oil well known as Webb No. 1 Well, which was drilled on the lease by appellants' immediate assignor, O. W. Killam, to whom the lease had been assigned by the Texas Company; in the alternative appellants sought to recover title to and possession of the casing and to enjoin defendants from interfering with their right to go upon the premises and salvage the same. Trial was to a jury, but when the parties had closed, the court on motion of defendants discharged the jury and rendered judgment that plaintiffs take nothing and that defendants recover of plaintiffs all costs.

Plaintiffs requested the court to file Findings of Fact and Conclusions of Law, and in response to such request the Court did file elaborate findings and conclusions. Both appellants and appellees rely somewhat on these findings and conclusions in their briefs. In our opinion they are not entitled to a feather's weight. Rule 296, Rules Civil Procedure, requires the court *upon a trial by the court* at the request of either party to state in writing conclusions of fact found by him separately from the conclusions of law. (Emphasis ours). Where trial is to a jury and the court per-

emptorily withdraws the case from the jury, we know of no authority by which the court is authorized to file findings and conclusions. If there was any evidence tending to support any material issue presented by the pleadings then it was the duty of the court to submit such issue to the jury. Upon withdrawal of the case from the jury, only the evidence supporting issues favorable to the losing party, viewed in its most favorable light, will be considered on appeal. This proposition is elementary and requires no citation of authority. If an appellate court should give any weight to the trial court's findings under such circumstances it would in effect deny the right of trial by jury. We will, therefore, consider the case in the light of the record, including the Statement of Facts, as though no findings had been filed.

The material facts reflected by the record may be briefly summarized. Paragraph 6 of the lease of July 13, 1936, above referred to, is as follows: "6. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing * *. *."

On March 9, 1939, the Texas Company, the original lessee, assigned the lease to O. W. Killam, retaining an over-riding 1/4 royalty. Thereafter Killam drilled four producing wells and one dry well. Well No. 1 in which the casing in question is located was one of the producing wells. On September 24, 1940, Killam assigned the lease, together with the wells, tubing, casing, tanks and other personal property to appellee W. M. Averill, who on the same day transferred a one-half interest therein to appellant Rupert Cox, and thereafter appellants operated and produced oil from the lease. Production gradually ceased and one well, No. 5, was plugged and abandoned and the casing salvaged. Shortly before November 1946 all production on the lease ceased. Production from well No. 1 had ceased approximately one year before all production on the lease ceased. The tubing was removed from well No. 1 and in March 1947 an attempt was made by appellants to force gas through this well into the sand

to restore pressure in the sand. Nothing was accomplished by this experiment. Mr. Sidney Webb, one of appellees, passed by the well when this experiment was being conducted but testified that he did not know what the effect of injecting the gas into the well would be and that he did not approve of what appellants were trying to do. On June 26, 1947, appellant W. M. Averill and the Texas Company, at the request of the land owner defendants executed the following release of the original oil and gas lease:

"State of Texas }
County of Nueces }

"W. M. Averill and The Texas Company, in consideration of $1.00 cash, and other valuable considerations, receipt of which is acknowledged *hereby release, relinquish and forever quitclaim any and all rights whatsoever now held or claimed by them or either of them under the following described oil, gas and mineral lease:* dated the 13th day of July, 1936, executed to The Texas Company by C. C. Miller, Guardian of the person and estate of Mrs. Nannie M. Webb, a non compos mentis, recorded in Volume 26, on pages 415–417, Oil and Gas Records of Nueces County, Texas, and covering 70 acres of land more or less out of Section Number 107, Geo. H. Paul Subdivision of the Driscoll Ranch in Nueces County, Texas.

"Executed on this 26 day of June, 1947.

"W. M. Averill
(W. M. Averill)
THE TEXAS COMPANY
By Wm. C. Kneale,
Attorney in Fact."

(Emphasis ours.)

Shortly prior to the 18th day of July, 1947, appellant W. M. Averill discussed with one of appellees, Sidney Webb, the desire of appellants to procure a new lease of the land covered by the original lease and on July 18, 1947, such a lease was prepared to be executed by the landowner appellees as lessors to appellants as lessees and was delivered to Sidney Webb with the request that he procure the signatures of all the heirs and Sidney Webb agreed that he would send the same around and attempt to procure the signatures. This lease was signed by several of the heirs, some on July 23, 1947 and some on August 5, 1947. On March 18, 1948, the appellee landowners executed an oil and gas lease to appellee Elbert Rhodes as lessee which covered the well in question. There was no cash consideration for this lease and its validity was conditioned upon the reworking or drilling operations being commenced within ninety days. The lease contained a recital to the effect that the "lessors herein are the owners of the oil and gas and other minerals and the casing and other equipment now at and in said oil wells so drilled by the said Texas Company" and that

"Lessees upon abandoning this lease shall have no right to pull, take or remove any of the casing or other equipment now at and in the said wells, but same shall remain the property of lessors."

Rhodes assigned this lease to appellee Drisco Oil Company, retaining a one-eighth over-riding royalty. On June 18, 1948, appellants through their production superintendent for the first time learned of the new lease and of appellees' intention to seek new production in some upper sand of the well and promptly notified some if not all of appellees of their claim of ownership to the casing. At this time no actual work on the reconditioning of the well had been started although some equipment had been moved to the well for this purpose. The appellants did not learn or know they would not be able to obtain a new oil and gas lease covering the well in question until they saw the rig being moved onto the lease by appellees in June 1948. Appellants' points, in substance, are that the court erred in withdrawing the case from the jury and rendering judgment against them; in holding that the execution of the release above quoted had the effect of passing title to the casing, and that the lessees (appellants) had no right to salvage the casing from the well, which was bottomed in a sand no longer capable of production, if there was a possibility of further production by reworking and completing the well at some upper sand, and that a suit for conversion of the casing would not lie until the Railroad Commission of Texas had first granted permission

to plug and abandon the well; and in refusing to consider parol testimony to show the purpose and intent of the release above quoted and the construction placed thereon by the parties, and in refusing to consider parol testimony showing accident and mistake covering the execution of the release.

The trial court was of the opinion that the release above quoted operated as a transfer of title to the casing in question from appellants to landowner appellees. This appears from his Conclusion of Law No. 1. We do not agree with this conclusion. Unquestionably under paragraph 6 of the lease the lessee or its assigns had the right to draw and remove the casing. This right negatives any contract, express or implied, that such casing should become a permanent fixture and part of the soil. It at all times remained the personal property of appellants, they having acquired it by assignment from Killam. Moore v. Carey Bros. Oil Co., Tex.Com.App., 269 S.W. 75 (opinion adopted); Hubert v. Collard, Tex.Civ.App., 141 S.W.2d 677, Wr. Dis. Judgment correct; Annotation 39 A. L.R. 1255. The lease had ceased to produce, under all the evidence, at the latest by November 1946. Under its terms it was therefore terminated. Appellants had the right to remove the casing from Well No. 1 within a reasonable time after such termination. Meers v. Frick-Reed Supply Corp., Tex. Civ.App., 127 S.W.2d 493, Writ Dis. This is true even though the lease had not expressly reserved a right of removal. Southwestern Oil & Gas Co. v. Kimball Oil & Dev. Co., Tex.Civ.App., 224 S.W. 1111; See also In re Midland Oil Co., 5 Cir., 3 F.2d 112.

In our opinion the release of June 26, 1947, did not relinquish this right. There is ample evidence that appellants had been endeavoring to secure a new lease from the land owners with a view to reworking and reconditioning the well in an effort to procure production at another sand stratum as was done by appellee lessees. These negotiations had started shortly after the release of June 26, 1947 had been executed. It is inconceivable that under such circumstances appellants would without any consideration moving to them relinquish for-

ever their right to remove their casing, valued at approximately $8,000, and thereby vest title to it in the land owners. The wording of the release, considered with the express provision of paragraph 6 of the lease does not require such an unreasonable construction when it is remembered that the right to remove the casing existed independent of this express provision of the lease. Southwestern Oil & Gas Co. v. Kimball Oil & Development Co., supra. As a matter of law the correct construction of the release is that contended for by appellants, i. e., it released the claim to the determinable fee in the mineral estate conveyed by the lease, but in no way affected appellant's title to the casing. This being so, the evidence clearly raised an issue of fact as to whether appellants had forfeited their title to the casing by failure to remove it within a reasonable time. What constitutes a reasonable time is generally a question of fact, or, as sometimes said, a mixed question of law and fact, and depends upon the circumstances of the particular case. 31 Tex.Jur. p. 398, Sec. 217; Meers v. Frick-Reed Supply Corp., supra; Armstrong v. Federal Supply Co., Tex.Civ.App., 17 S.W.2d 170.

Appellees attempt to sustain the court's action in withdrawing the case from the jury and rendering judgment against appellants on the theory that appellants did not allege or prove that they had procured permission from the Railroad Commission to plug the well and pull the casing, and that the uncontroverted evidence shows that the Railroad Commission would not have granted them permission to do so since it appears that well No. 1 was at all times capable of further production at another stratum and had been reworked and was a producing well at the time of the trial. If the facts would have sustained a jury finding that a reasonable time in which appellants could have pulled the casing had not elapsed since the termination of the lease, as we have held, and the jury would so find, then the title to the casing was still vested in appellants and we think the evidence was sufficient to show a conversion even though appellants did not show their right to plug the well and pull the casing. A repudiation

or denial of the owner's right or title to personal property and exercise of dominion over such property in denial of and inconsistent with such right or title may constitute a conversion, even though the person exercising such dominion may have come lawfully into possession of such property and there be no unlawful interference with the owner's possession thereof. 42 Tex. Jur. p. 518, Section 12; Jordan v. Broad, Tex.Civ.App., 170 S.W.2d 655, loc. cit. 656 (1–3). And even though the true owners may not be in possession of the property nor entitled to the immediate possession thereof. 42 Tex.Jur. p. 531, Sec. 21; Cox v. Patten, Tex.Civ.App., 66 S.W. 64, writ denied. Here the appellee landowners asserted their ownership of the casing and denied appellants' title thereto by their lease of same to the Drisco Oil Company and by their refusal to negotiate with appellants for reasonable compensation for use thereof. Appellees also denied appellants access to the well for the purpose of salvaging their casing. These acts were sufficient to constitute a conversion of the casing even though appellants did not have the present right to salvage it.

In view of what we have said the other points of error become immaterial. For reasons indicated the judgment is reversed and the cause remanded.

Mr. Justice SUTTON does not concur. His views are expressed in the following memorandum.

SUTTON, Justice (dissenting).

This lease ceased to produce from the bottom sand in November 1946. The plaintiffs concede the lease terminated on that date by virtue of its own terms and they had no further rights under it, except to remove their personal property and fixtures as provided under the terms of the lease, including the removal of casing in the wells, which was a right under the law and a specific provision of the lease contract. Plaintiffs admit they never at any time desired to remove the casing nor sought to do so until after they found the subsequent lessees working the well in 1948, but had hoped to secure a new lease and rework it themselves.

The casing had been pulled from well No. 5 and the well plugged. The casing could not be pulled from wells 3 and 4 and it had been abandoned in the wells. The testimony is it was not known and could not be known until the effort was made to pull the casing whether any of it or how much of it could be pulled. It was conceded some 2800 or 2900 feet of it could not be pulled because it had been cemented in. That was the bottom string. Five hundred sacks of cement had been run into the hole to cement the bottom string. It was estimated this cemented in the 2800 or 2900 feet of that string, but might have come even higher.

The Texas Company had an option to purchase at salvage value any well proposed to be abandoned and plugged and the assignees were required to give written notice of such intention and purpose and the Texas Company had 20 days after the receipt of such notice to exercise their option. The option specifically covered the casing in the well. The notice required was never given, so far as the record shows, on well No. 1.

No application to plug and abandon was ever given the Railroad Commission, because the plaintiffs had not abandoned their desire to rework the well. In short, nothing had been done either at the date the release was executed or at the time they sought to remove the casing, unless paid for it by the subsequent lessees, in 1948. In other words, it is not shown they ever had a right to remove the casing.

At the time the release was executed the only contingent right plaintiffs had under the lease was to remove the casing. They released, relinquished and forever quitclaimed any and all rights whatsoever held or claimed by them under the lease. There is ample evidence, if the instrument were ambiguous, from which it might be concluded they intended the instrument to cover the casing. But, in all events, the terms are plain and clear and they cannot be heard to say they intended to or did reserve any right under the lease. The intention of the parties is to be gathered from the terms of the instrument.

Aside from the fact the evidence conclusively shows the plaintiffs had at no time secured their right to remove the casing and the evidence is insufficient to establish any damages, the release by its plain unambiguous terms precludes them, in my opinion.