### TEXAS CO. v. SORRELL.
### No. 1308.

United States District Court,
D. Montana, Great Falls Division.
May 1, 1953.

Arthur S. Jardine, Samuel B. Chase, Jr., John D. Stephenson, Great Falls, for plaintiff.

E. J. McCabe, E. J. McCabe, Jr., Great Falls, for defendant.

PRAY, Chief Judge.

In the above entitled cause plaintiff alleges in its complaint that it is the owner of and entitled to the possession of and seeks to recover certain personal property used in drilling and developing oil wells, therein described, now in possession of defendant and located upon the premises described in the complaint situated in Toole County, State of Montana. That such personal property was placed upon said premises during the term and pursuant to the provisions of a certain oil and gas mining lease, issued to plaintiff by Ralph A. Froemke and Marie A. Froemke, his wife, dated February 4, 1943, and duly recorded in the office of the County Clerk and Recorder of Toole County, Montana.

That on February 16, 1951, plaintiff caused to be filed with the Board of Railroad Commissioners of Montana, Oil and Gas Well Division, notices of intention to abandon the two wells theretofore drilled by it on said premises; that operations for abandonment of these wells were approved by the Oil and Gas Well Division and notice thereof received by plaintiff about February 20, 1951.

That plaintiff claims the right to remove all the property described in said complaint, including all casing in wells known as Nos. 1 and 2, all situated upon the premises aforesaid. That on February 17, 1951, plaintiff through its agents went to said premises for the purpose of removing said property but was prevented by the defendant from doing so, the latter claiming that he was the owner of such property and therefore entitled to the possession thereof by virtue of a certain oil and gas lease from Marie A. Froemke, a widow, covering said premises, dated January 26, 1951.

That on March 6, 1951, plaintiff caused the defendant to be served with a certain

written notice reasserting its claim of ownership of said property and right to remove the same, which is attached to the complaint as exhibit "A" and made a part thereof. Plaintiff asks that defendant be required to set forth his claim to said property and that the validity thereof be determined, and that plaintiff be adjudged the owner and entitled to remove the same, and for other relief set forth in the complaint.

The court has considered fully the complaint, answer, reply and stipulation filed herein and the matters therein stated as either admitted or denied, and the claim of ownership of the aforesaid property by the defendant, who relied principally upon plaintiff's written release of all rights under its lease, in which, without naming a second party or grantee, it used the words "hereby releases, relinquishes and forever quit claims". Aside from the facts already admitted in the pleadings, following a pre-trial conference counsel for the respective parties entered into a stipulation of facts which were to be accepted by the court as true without the necessity of further proof thereof, and be tried to the court without a jury.

The stipulation admitted plaintiff's lease, the two wells drilled and the amount of production of each well, and the decline in production until one well produced only 1.50 barrels of oil and 20 barrels of water and the other produced 1.38 barrels of oil and 17 barrels of water per day. That the property described in exhibit "B", attached to the stipulation, ownership of which is claimed by plaintiff, and installed by it in and about the two wells aforesaid, has at all times since said installation remained and still remains in and about said two wells.

That on or about February 17, 1951, plaintiff attempted to remove said personal property from said premises and was prevented from doing so by defendant, who was then in possession of said premises and personal property and who claimed ownership thereof, and who is still in possession and claiming such ownership under his oil and gas lease dated January 26, 1951.

That exhibit "B" correctly lists current prices and that column headed "Present Value" is the reasonable and fair market value of said equipment at all times on and after January 1, 1951, it being understood that said values refer to the equipment as so located and does not take into account the reasonable cost of removing the underground casing and other equipment from its location to the surface; the "Operating Regulations" of the Board of Railroad Commissioners of Montana applicable to the two wells, attached thereto as exhibit "I", are accepted; attached notices, exhibits "C" and "D", of intention to abandon the two wells, filed by plaintiff with the Board of Railroad Commissioners on February 17, 1951, were approved by the Assistant Oil and Gas Supervisor at Shelby, Montana, February 17, 1951, and notice of such approval was received by plaintiff February 20, 1951; exhibit "E" attached is the "Release of Oil and Gas Lease" executed August 4, 1950, by plaintiff, which was filed for record November 2, 1950; also attached to the stipulation as exhibit "F" is the oil and gas lease dated January 26, 1951, from Marie A. Froemke, a widow (and the successor in interest in ownership of said land of Ralph A. Froemke and Marie A. Froemke, the lessors in the lease to plaintiff heretofore referred to) to the defendant, which lease was duly filed for record in Toole County, Montana, January 29, 1951.

Briefly outlined the defendant's theory is that the casing and equipment at the wells, which are now producing wells through his efforts, have become affixed to the realty and that plaintiff is without right to remove the same after releasing, relinquishing and forever quit-claiming all rights under its said oil and gas lease; that removal of the casing and equipment would result in great damage and would be contrary to law. Defendant claims that through his efforts he has brought the wells into production and at a profit.

After considering the facts and the law the outcome of the case seems to rest upon the determination of the question as to whether the plaintiff can recover for conversion of the property by the defendant, and that question is to be decided principally upon the interpretation given the language of the release— "release, relinquish and forever quitclaim, etc."

It appears that on March 6, 1951, the defendant was served with a written notice that plaintiff was the owner of the property aforesaid and that its plan to abandon and plug the wells and remove the casing had been approved by the Oil and Gas Supervisor on February 17, 1951. It further appears that defendant's work and expenditures in the development of the two wells did not begin until the last of March, 1951, and after he had received the written notice of claim of ownership by plaintiff of the property aforesaid. The action taken by plaintiff as above stated appears to have been within a reasonable time, as is indicated by authorities cited.

In executing the "Release of Oil and Gas Lease", plaintiff claims it did not convey "anything to anybody", but only released its rights under the lease, which it had a right to do at any time and terminate the lease, but that no abandonment of its casing and other property was intended or effected. Plaintiff alleges that defendant prevented it from recovering its property which it had neither conveyed nor abandoned. It would seem that at the time in question plaintiff had demonstrated that further operation of the wells would be commercially unprofitable, and that the wells had been lying dormant for nearly a year.

For the obvious reasons that the wells are now in production and the aforesaid Commission has since withdrawn permission for removal of casing that question cannot now be considered. The refusal of the defendant to permit plaintiff to remove the property under the circumstances previously related and at the time specified would seem to amount to a conversion thereof. That generally speaking under the terms of the lease itself there could be no doubt of the right of the lessee to release all its rights under the lease and remove its equipment at any time during the term, or within a reasonable time thereafter, unless, as in this particular instance, it should be held under the language of the release executed by plaintiff that a conveyance of such casing and equipment to the land owner had been effected.

Plaintiff has cited the Cox case as the answer to the above problem. Cox v. Rhodes, Tex.Civ.App., 233 S.W.2d 924, 927. Counsel assert this Texas case is exactly in point; the language of the release in that case was: "hereby release, relinquish and forever quitclaim any and all rights whatsoever now held or claimed by them or either of them under the following described oil, gas and mineral lease".

The provisions of the lease in question were the same in the Cox case as in this case, reading as follows: "6. Lessee shall have the right at any time during or after the expiration of this lease to remove all property * * * placed by Lessee on said land, including the right to draw and remove all casing * * *." In reversing the lower court in that case, the Appellate Court held in substance that the lessee under the provisions of the lease had the right to remove the casing at any time, which meant within a reasonable time after the termination of the lease, and that the release did not relinquish this right, that it released only the lessee's claim to the minerals under the lease.

The court after consideration of the arguments of counsel, briefs and authorities has decided to follow the rule of interpretation as to the terms of the release in question laid down in the Cox case; if that is the correct view, then the defendant wrongfully deprived plaintiff of the right to recover its casing and equipment which it apparently was entitled to at the time the demand was made, and thus might properly be held to have converted the same to his own

use. The value of such property is listed at $5,951.65 with the casing in place in both wells, and counsel contend that this is the value that should be accepted by the court instead of that sum less the cost of removal as contended by defendant. But the evidence here relating to the difficulties that might be encountered in the drawing and removal of casing from an oil well might present a serious problem for solution, and one that cannot be solved until an attempt is made to remove it; however, neither of the parties can remove the casing at this stage of the situation.

The defendant Sorrell cannot be charged with bad faith; he inquired and investigated and was advised by counsel learned in the law that the release of the lease by plaintiff carried with it ownership of the casing and equipment to the landowner, who would have the right to lease or sell it to the defendant. The defendant moved cautiously and tried to protect his own rights before taking a lease and attempting to increase production in the two wells which the plaintiff, experienced in the oil industry, had abandoned as too small in production to be worth further effort or expense. The defendant, it appears from the evidence, was no novice in the drilling of wells and the production of oil, and later on made a success of what had before been a failure.

From the court's view as to the ownership of the property in question in the plaintiff the defendant is placed in a serious predicament which is not altogether his fault. Some time had elapsed before the plaintiff asserted its claim to the casing after executing its release and quit-claim, but under the authorities examined the court has held that it moved in time. Another thing that

should have passing notice here is the misleading language used by plaintiff in the release of its lease; it has not only been misleading in this case, but it was also misleading in the Cox case in which the present plaintiff was a party, and in which one of the Judges of the Appellate Court hearing the case wrote a dissent. It was all because of the words: "release, relinquish and forever quit-claim". Lawyers, as well as laymen, could be mistaken in the interpretation and application of the word "quit-claim" as it appeared in that release. If plaintiff had added "reserving the right to remove the casing", as contained in the lease itself, it might have saved much time and expense both here in Montana and also in Texas, and plaintiff knew from its experience in the Cox case that a question might arise at any time in the future as to the meaning and application of the word "quit-claim" as used in its release.

But to revert to the drawing and recovery of the casing and the problematical aspects thereof, as appears from the evidence, and how much of it could actually be drawn and recovered, and whether the cost of recovery, which would also be speculative, could be deducted from the value above stated. It seems to the court, in reviewing the facts, that there are some equitable features here to be taken into account in awarding a judgment. From all the circumstances found here the court is of the opinion that the sum of $3,000 would be a fair and reasonable sum to be awarded plaintiff for the conversion of the property aforesaid, and accordingly judgment will be entered for that amount, with costs of suit. Findings and conclusions may be submitted and form of judgment. Exceptions allowed counsel.